HAWAIIAN LAND CO., LTD. and DILLINGHAM COR-
PORATION, Petitioners, *v*. HIRAM KAMAKA, Director
of Finance, Respondent

NO. 5647

MARCH 25, 1976

RICHARDSON, C.J., KOBAYASHI,
OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This case has been submitted to this court on an agreed
statement of facts and proposed alternative forms of
judgment.[1] This submission deals with a problem resulting

---

[1] HRS § 602-5(3), as amended by Act 88, S.L.H. 1972, reads:

(3) To entertain, in its discretion, any case submitted without suit when there
is a question in difference which might be the subject of a civil action or

from a long standing dispute between Hawaiian Land Company, Ltd., and Dillingham Corporation (petitioners) and the Director of Taxation, State of Hawaii (Tax Director), concerning the valuation of the Ala Moana Center, owned by the Dillingham Corporation, for real property tax purposes.

The following are some of the relevant facts:

From 1963 to and including 1973, the petitioners have paid, under protest, the annual assessment of real property taxes. With a view to eliminate or minimize the need for protracted litigation, the petitioners and the Tax Director entered into negotiation and reached agreement as follows:

1. The assessments for the tax years 1964, 1965, 1967 and 1968 would stand;

2. The petitioners are entitled to refunds on account of real property taxes paid under protest for the years 1966, 1969-70, 1970-71, 1971-72, and 1972-73, as follows:

| | |
|---|---|
| 1966 | $ 71,594.84 |
| 1969-70 | 66,592.19 |
| 1970-71 | 125,451.85 |
| 1971-72 | 84,184.88 |
| 1972-73 | 103,139.30 |
| | $450,963.06 |

---

proceeding in the supreme court, circuit court, or tax appeal court, and the parties ageee upon a case containing the facts upon which the controversy depends.

Rule 21, Rules of the Supreme Court of the State of Hawaii, reads:

RULE 21. AGREED FACTS, SUBMISSION ON.

(a) Submission. Parties to a question in difference which might be the subject of a civil action or proceeding in this court or the circuit court or tax appeal court may, without action, agree upon a case containing the facts upon which the controversy depends, a statement of the question or questions in difference, the contentions of the parties, and the form of judgment to be rendered.

(b) Good Faith. It must be shown by affidavit that the controversy is real and the proceedings in good faith to determine the rights of the parties.

(c) Disposition. The court may, in its discretion, require the case to be submitted to the appropriate court as in other cases, subject to appeal. If the court entertains the case, the judgment rendered thereon shall be entered and may be enforced as in other cases.

For the years wherein the petitioners and the Tax Director agreed that the petitioners are entitled to a refund, the petitioners had paid a total sum of $3,404,282.29. Of said amount, "only" $1,816,248.10 was "actually in dispute" within the meaning of HRS § 232-24.[2]

Though the Director of Finance (respondent or State) escrowed the disputed amount in "special deposit", the amount was commingled by the respondent with other deposits into the State of Hawaii Trust Fund and respondent invested amounts therefrom in gross equal to 50% of the aggregate amount during the tax year 1966, and 90% of the aggregate for the tax years 1969 to 1973, all sums so treated on the books and records of the State without regard to source, in interest-bearing bank accounts, certificates of deposit and other securities. It is impossible to identify any given investment in a given bank account, certificate of deposit, or other security as having been of any particular disputed payment made by any particular taxpayer.

The respondent refused to pay petitioners interests on certain refunds.

[2] HRS § 232-24 reads:

Taxes paid pending appeal. The tax paid upon the amount of any assessment, actually in dispute and in excess of that admitted by the taxpayer, and covered by an appeal to the tax appeal court duly taken, shall, pending the final determination of the appeal, be paid by the director of finance into the "litigated claims fund". If the final determination is in whole or in part in favor of the appealing taxpayer, the director of finance shall repay to him out of the fund, or if investment of the fund should result in a deficit therein, out of the general fund of the State, the amount of the tax paid upon the amount held by the court to have been excessive or nontaxable, together with interest at the rate of eight per cent a year from the date of each payment into the litigated claims fund, the interest to be paid from the general fund of the State. The balance, if any, of the payment made by the appealing taxpayer, or the whole of the payment, in case the decision is wholly in favor of the assessor, shall, upon the final determination become a realization under the tax law concerned.

In a case of an appeal to a board of review, the tax paid upon the amount of the assessment actually in dispute and in excess of that admitted by the taxpayer, shall during the pendency of the appeal and until and unless an appeal is taken to the tax appeal court, be held by the director of finance in a special deposit. In the event of final determination of the appeal in the board of review, the director of finance shall repay to the appealing taxpayer out of the deposit the amount of the tax paid upon the amount held by the board to have been excessive or nontaxable, if any, the balance, if any, or the whole of the deposit, in case the decision is wholly in favor of the assessor, to become a realization under the tax law concerned.

The questions submitted for resolution by this court are:

1. Whether interest is payable upon the amount of a disputed tax paid by a taxpayer under protest, and which is refunded to the taxpayer pursuant to a settlement, for the period the State had possession and use of such sum pending appeal to a board of review (as distinguished from an appeal to the tax appeal court); and if so,

2. Whether the rate of interest so payable is:

a. 8% per annum from the time of payment of the ultimately refunded tax to the date of refund, in accordance with HRS § 232-24; or

b. 2% per annum from the date of payment to January 1, 1968, the effective date of Act 134, Session Laws of Hawaii 1967, which increased the rate of interest on tax refunds from 2% to 8%, and 8% after January 1, 1968; or

c. the legal rate of 6% per annum provided in HRS § 478-1, upon money had and received generally; or

d. a rate equal to the actual rate of return earned or earnable by the State from investment of the excess tax money in question.

Respondent contends that under HRS § 232-24, interest is payable only on the amounts of refunds of disputed taxes covered by appeals to the tax appeal court, and that no interest whatever is payable on refunds of disputed taxes covered by appeals to a board of review, or if interest is payable the rate should be 2% per annum before January 1, 1968, the effective date of the amendment to HRS § 232-24, and 8% thereafter.

Petitioners contend, on the other hand, that the State is liable for interest under HRS § 232-24 whenever it enjoys the use and possession of collected tax moneys subsequently refunded, whether the proceeding which pended during such use and possession was one of appeal to the tax appeal court or to a board of review. The petitioners contend that this court would be justified in departing from the literal interpretation of § 232-24 as the court did in *Pacific Insurance Company, Ltd. v. Oregon Automobile Insurance Company*, 53 Haw. 208, 211, 490 P.2d 899, 901 (1971), because it would be absurd and

unjust to allow interest on refunds from appeals to the tax appeal court and deny interest if the appeal is made to the boards of review merely because the statute does not provide for interest in the case of boards of review appeals.

In the alternative, petitioners contend that interest is payable upon tax refunds either at the legal rate of 6% provided in HRS § 478-1, or at a rate equal to the State's actual or potential earnings from investment of excess tax payments received and held by it, as held in *Hawaiian Trust Company, Ltd. v. Smith,* 32 Haw. 38 (1931).

The dissimilar provisions for appeal to the tax appeal court and to a board of review, as provided in HRS § 232-24, were initially enacted by Act 224, S.L.H. 1951.

The Standing Committee Report accompanying the bill states:

> This bill will enable the treasurer to invest moneys paid under protest or held pending an appeal to the tax appeal court, by providing that instead of constituting trust funds, such moneys shall be paid into a fund to be known as the "litigated claims fund." The result will be that Section 5802.01, as amended by Act 244 (Ser. A-92) of the Session Laws of Hawaii 1947, will apply to and provide for investment of such funds.

> The bill will allow persons successful in such protests or tax appeals interest at the rate of 2%. This interest will be paid from the general fund, which will have received the interest earned on the litigated claims fund pursuant to Section 5802.01. If the Territory [State] should prevail in even 50% of the litigation it should, even after the payment of 2% interest, realize some earnings on such funds, as compared with the present situation in which the Territory [State] earns nothing on moneys held awaiting the final outcome of tax appeals and protests. Moreover the payment of 2% interest will allow the persons making the payments a higher rate than they can obtain at the present time, the present law allowing only the bank interest earned on certificates of deposit representing the trust fund.

>     . . . .

Standing Committee Report No. 351 on H. B. No. 728 (Finance), 1951 House Journal at 496.

HRS § 232-24, prior to the 1951 amendment, provided as follows:

> Sec. 5219. Taxes paid pending appeal. The tax paid upon the amount of any assessment, actually in dispute and in excess of that admitted by the taxpayer, and covered by an appeal duly taken, shall, during the pendency of the appeal, be held by the treasurer in a special deposit to await the final determination of the appeal. If the final determination is in whole or in part in favor of the appealing taxpayer, the treasurer shall repay to him out of such deposit the amount of the tax paid upon the valuation held by the court to have been excessive or non-taxable. The balance, if any, or the whole of the deposit, in case the decision is wholly in favor of the assessor, shall, upon the final determination, become a realization under the tax law concerned. (R.L.H. 1945)

The Standing Committee Report No. 351 as quoted above makes it clear that the predecessor of HRS § 232-24 was amended to enable the respondent to deposit in a "litigated claims fund" only the amount of tax in dispute and appealed to the tax appeal court, and to invest said amount or portion thereof.

A detailed construction of the provision of HRS § 232-24 clearly shows the considerable differences of treatment accorded the tax paid under protest and appealed to the tax appeal court and the tax paid under protest and appealed to the boards of review.

A. *Appeal to the Tax Appeal Court*

1. The respondent must deposit the disputed amount into a "litigated claims fund";

2. The respondent may invest the said moneys;

3. If investment causes a deficit in the amount, the respondent is required to make whole the principal amount out of the general fund of the State for the successful taxpayer;

4. The respondent is required to pay the stated interest, out of the general fund of the State, in addition to the disputed tax payment.

B. *Appeal to the Boards of Review*

1. The respondent is required *to hold the amount of disputed tax in a special deposit;*

2. The respondent is not required to pay any interest;

3. The respondent has no power to use the general fund of the State to make up for any deficit that may occur on the amount in the special deposit; neither does the respondent have the authority to pay interest out of the general fund of the State.

In our opinion the Legislature, by design, did not provide for the payment of interest on the tax payment in issue because the respondent was specifically required to *hold in a "special deposit"* the tax paid under protest and appealed to the boards of review. We believe that *Pacific Insurance, supra,* is inapposite.

We are, therefore, of the opinion that petitioners' contention that HRS § 232-24 requires the respondent to pay interest on the sum in question is clearly without merit.

However, petitioners contend in one of their alternative arguments that the respondent must pay to the petitioners the actual earnings of the special deposit, in accordance with the legal principle established in *Hawaiian Trust, supra.*

We agree with the contention of the respondent that any increase or earnings of that part of the successfully protested payment of tax actually invested, belong to the petitioners.

Clearly, when the tax is paid under protest and the protesting taxpayer prevails, the principal sum of the tax paid under protest and the earnings thereon remain throughout as the property of the taxpayer. Thus, any action instituted by the taxpayer seeking recovery of the earnings or increase of the principal sum, will not be an action requiring the State to pay interest on the tax paid under protest. As held in *Hawaiian Trust,* there is an implied contract on the part of the State, within the meaning of HRS § 661-3[3] to pay the actual

---

[3] HRS § 661-1 provides:

§ 661-1 *Jurisdiction, circuit courts.* The several circuit courts shall, subject to appeal and exceptions to the supreme court in the manner now provided by law, have original jurisdiction to hear and determine the following matters, and shall determine

earnings of the principal sum to the petitioners and a complaint stating a claim for relief (assumpsit) for money had and received would therefore lie for the recovery of the said actual increase or earnings, and in addition, any returns accruing on the earnings.

*Tobias C. Tolzmann* for petitioners.

*Tany S. Hong*, Deputy Attorney General, for respondent.

---

all questions of fact involved without the intervention of a jury.

(1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by either house of the legislature; provided, that no suit shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth.