106 P.3d 339

Michael A.S. CHUN, Gladys Farm, Herbert T. Imanaka, Jimmy T. Izu, Samuel Y. Kakazu, Billy G. Southwood, Eishin Tengan, and Thomas Y. Yano, Appellants–Appellees/Cross–Appellants,

v.

BOARD OF TRUSTEES OF the EMPLOYEES' RETIREMENT SYSTEM OF the STATE OF HAWAI'I; and Employees' Retirement System of the State of Hawai'i, Appellees–Appellants/Cross–Appellees.

Valerie Yamada Southwood, Appellant/Appellant–Appellant

and

Barbara Jane Luke, Appellant–Appellee/Appellant–Appellant

v.

Board of Trustees of the Employees' Retirement System of the State of Hawai'i; and Employees' Retirement System of the State of Hawai'i, Appellees–Appellants/Appellees–Appellees.

Cynthia C. Ching, Class Member/Party–In–Interest–Appellee.

No. 23892.

Supreme Court of Hawai'i.

Jan. 31, 2005.

Reconsideration Denied Feb. 22, 2004.

Charles K.Y. Khim, Honolulu, on the briefs, for appellants-appellees/ appellants-appellants Michael Chun, et al.; and Valerie Yamada Southwood, et al.

Mark J. Bennett and Carrie K.S. Okinaga, Honolulu, of McCorriston Miller Mukai MacKinnion LLP, on the briefs, for appellees-appellants/ appellees-appellees Board of Trustees of the ERS and the ERS.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ, and Circuit Judge MASUOKA, in place of DUFFY, J., recused.

Opinion of the Court by LEVINSON, J.

The appellees-appellants/appellees-appellees Board of Trustees of the Employees' Retirement System (ERS) of the State of Hawai'i [hereinafter, "the Board"] and the ERS [collectively hereinafter, "the ERS"] appeal from the October 18, 2000 order of the circuit court of the first circuit, the Honorable Eden E. Hifo presiding, following remand from this court regarding attorneys' fees and postjudgment interest for retired teachers of the class action [hereinafter, "the order granting fees and interest"].

The appellants-appellees/appellants-appellants Michael A.S. Chun, Gladys Farm, Herbert T. Imanaka, Jimmy Izu, Samuel Y. Kakazu, Billy G. Southwood, Eishin Tengan, and Thomas Y. Yano [collectively hereinafter, "the Principals and Vice Principals"], as well as Valerie Yamada Southwood and Barbara Jane Luke [collectively hereinafter, "the Teachers"] [both classes collectively hereinafter, "the Retirees"] appeal from the following orders of the circuit court of the first circuit, the Honorable Eden E. Hifo presiding: (1) the October 18, 2000 order granting fees and interest;[1] and (2) the February 14, 2001 order granting the ERS's December 19, 2000 motion for partial stay of proceedings to enforce the order granting fees and interest pending appeal [hereinafter, "the order granting stay of proceedings"].[2]

On appeal, the ERS argues, *inter alia,* that the circuit court erred in entering the order granting fees and interest, inasmuch as "sovereign immunity bars the award of postjudgment interest."[3] In response, the Retirees contend, *inter alia,* that "there is no merit to [the ERS's] sovereign immunity argument."

■ In their cross-appeal of the order granting fees and interest, *see supra* note 1, the Retirees allege that the circuit court erred in entering the order granting fees and interest for the following reasons: (1) the circuit court should not have excluded an "award of postjudgment interest" "from the 'percentage of the common fund'[4] calculation of attorney[s'] fees"; (2) the circuit court should not have excluded "the gross amount recovered for [the Retirees]" "from the percentage of the common fund calculation of attorney[s'] fees"; (3) the circuit court should not have applied "the federal court's precedent rather than [the standards of] Hawai'i appellate court[s, which were] enunciated in [*In re Chow,* 3 Haw.App. 577, 656 P.2d 105 (1982) ]," or, in the alternative, the circuit court erred in its application of federal precedent; (4) the circuit court "fail[ed] to enforce the implied agreement to pay [the Retirees] investment income earned on wrongfully withheld back retirement benefits"; and (5) the circuit court "fail[ed] to enforce the expressed agreement to pay [the Retirees] the premium or interest on back retirement benefits."

The ERS counters, *inter alia:* (1) that "in calculating the common fund, the [circuit] court did not abuse its discretion in excluding

1. The Retirees' challenge of the order granting fees and interest was originally docketed under No. 23893 because it was a cross-appeal of the ERS's appeal, which was docketed under No. 23892. On January 30, 2001, this court ordered consolidation of these appeals for briefing and disposition under No. 23892.

2. The Retirees' challenge of the order granting stay of proceedings was originally docketed under No. 24144. On October 29, 2004, this court ordered consolidation of No. 24144 with No. 23892 for disposition under No. 23892.

3. The ERS also asserts the following: (1) that "there neither was, nor could there have been, a money judgment upon which postjudgment interest was or could have been awarded"; (2) that "the circuit court never acquired jurisdiction on appeal to enter a money judgment against the ERS"; (3) that "even were there a money judg-

ment in this case, interest cannot begin to accrue until a date after which monies could have been actually paid by the ERS"; and (4) that "the circuit court exceeded the scope of the Supreme Court mandate." Insofar as the foregoing arguments are immaterial to our disposition of the present matter, we do not address them. Similarly, we only recite the Retirees' responsive arguments to the extent that they concern the dispositive issue, to wit, sovereign immunity, and we do not discuss the contentions set forth by the ERS in its reply brief.

4. The term "common fund" refers to the total amount recovered by virtue of the class action judgment. *See Chun v. Board of Trustees of Employees' Retirement Sys. of State of Hawaii,* 92 Hawai'i 432, 434, 992 P.2d 127, 129 (2000) (*Chun III* ).

its postjudgment interest award to the [T]eachers' class"; (2) that "in calculating the common fund, the [circuit] court did not abuse its discretion by excluding the 'offset' for mandatory contributions ordered by Judge Nakatani"; (3) that "in this common fund case, the [circuit] court did not abuse its discretion by applying the 25 percent benchmark adopted by the [N]inth [C]ircuit [C]ourt of [A]ppeals" and "did not abuse its discretion by declining [Charles Khim's (*i.e.*, the Retirees' counsel's)] request for [one-third] percentage of the common fund"; (4) that "the lower court never addressed, nor was it asked to address[,] an 'implied contract' theory of recovery for interest, and [the Retirees] are precluded from raising this new issue on appeal"; and (5) that "the [circuit] court correctly declined to grant [prejudgment interest to [the Teachers] on the basis of the existence of a private stipulation entered *between the ERS and the retired principals' and vice principals' class.*"[5] (Emphasis in original.)

In their appeal from the order granting stay of proceedings, *see supra* note 2, the Retirees allege that "the [circuit] court erred in not requiring the [ERS] to pay postjudgment interest upon the monetary award issued by the [circuit] court on October 18, 2000 as a condition of staying the operation of said October 18, 2000 monetary award." The ERS responds (1) that "[t]he circuit court was correct in declining to award interest as a condition of the stay pending appeal, because such an award would violate [HRS]

§ 478–3 [ (1993)[6]]," and (2) that, "even if the circuit court could have awarded interest upon interest under [HRS] § 478–3, it is within the court's discretion to have decided not to condition the stay pending appeal on payment of interest."[7]

For the reasons discussed *infra* in section III, we hold: (1) that the State is immune from awards of HRS § 478–3 postjudgment interest in HRS § 661–1 (1993)[8] actions, such that the circuit court erred in awarding postjudgment interest to the Retirees; (2) that, based on the foregoing holding, the circuit court did not abuse its discretion in excluding postjudgment interest from calculation of attorneys' fees because the ERS is immune from the assessment of postjudgment interest; (3) that the circuit court did not abuse its discretion in excluding the "offset" from calculation of attorneys' fees because the March 4, 1996 final order expressly limited attorneys' fees by excluding the offset; (4) that the circuit court did not abuse its discretion in ordering that attorneys' fees be set at twenty-five percent of the common fund because no controlling precedent required the circuit court to award a specific amount; (5) that the circuit court did not err in failing to address investment income because to do so would have exceeded the scope of this court's mandate on remand; (6) that the circuit court did not abuse its discretion in failing to award the Teachers prejudgment interest because the Teachers are barred from such an award by HRS

---

**5.** Although the Retirees submitted a reply brief, we do not recite the arguments raised therein because they do not significantly elaborate upon the contentions set forth in their opening brief.

**6.** HRS § 478–3 provides as follows:

> **On judgment.** Interest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit.

**7.** Although the Retirees submitted a reply brief, we do not recite the arguments raised therein because they are not outcome-dispositive.

**8.** HRS § 661–1 provides:

> **Jurisdiction.** The several circuit courts of the State and, except as otherwise provided by

statute or rule, the several state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury.

> (1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth.

§ 661–8 (1993);[9] and (7) based on our holding that the State is immune from awards of HRS § 478–3 postjudgment interest in HRS § 661–1 actions, the circuit court did not err in refusing to order the ERS to pay postjudgment interest upon the order granting fees and interest as a condition of staying the execution of that order.

Accordingly, we (1) affirm the portion of the October 18, 2000 order as to the granting of attorneys' fees, *i.e.,* paragraphs one through thirteen of the order and paragraph two of the decree, (2) reverse the portion of the October 18, 2000 order granting postjudgment interest, *i.e.,* paragraphs fourteen through twenty of the order and paragraph one of the decree, and (3) affirm the February 14, 2001 order granting stay of proceedings.

## I. BACKGROUND

### A. *Chun I through Chun III*

As a preliminary matter, we note the following background, set forth in *Chun v. Board of Trustees of Employees' Retirement Sys. of State of Hawaii,* 92 Hawai'i 432, 992 P.2d 127 (2000) (*Chun III* ):

#### A. *Chun I*

Prior to retiring, the Retirees (as public school principals, vice principals, or teachers) were all "ten-month" employees of the Department of Education (DOE). The present appeal arises out of two class action lawsuits-one (*Chun* ) brought on behalf of retired principals and vice principals and the other (*Southwood* ) on behalf of retired teachers-filed in the first circuit court. Each complaint sought relief based upon the allegation that the ERS had undercalculated the benefits to which the Retirees were entitled. The circuit court (1) entered summary judgment in favor of the retired principals and vice principals, (2) ruled that "the lump sum payment of 'earned summer salary,' paid upon retirement[,] was compensation attributable to

the month in which the member of the class retired," and therefore (3) ordered the ERS to include those amounts in the recalculation of the principals' and vice principals' "average final compensation." *Chun v. Employees' Retirement Sys.,* 73 Haw. 9, 10, 828 P.2d 260, 261 (1992) (*Chun I* ). The ERS appealed. In *Chun I,* this court vacated the circuit court's order and remanded the case with directions that the circuit court remand the matter to the ERS for a full administrative hearing before the Board. *Id.* at 11, 828 P.2d at 263. Based on *Chun I,* the circuit court likewise remanded the claims asserted in *Southwood* for an administrative hearing.

#### B. *Chun II*

Subsequent to the administrative hearing, on March 23, 1995, the Board issued a "decision" denying all of the Retirees' claims. *Chun v. Employees' Retirement Sys.,* 87 Hawai'i 152, 158, 952 P.2d 1215, 1221 (1998) (*Chun II* ). The Retirees appealed the Board's decision to the circuit court. *Id.* On March 4, 1996, the circuit court entered its "final order" reversing the Board's decision and directing that retirement pay be increased both retroactively and prospectively. The March 4, 1996 order provided in relevant part as follows:

> 2. [The ERS and the Board] shall recalculate the [average final compensation (AFC) ] of all [Retirees] by including the earned salary paid in lump sum upon retirement in its calculation. However, [the ERS and the Board] should only include those mon[ie]s earned in the three years used to calculate [the AFC]. . . .
>
> 3. [The Retirees] are awarded attorney's fees only insofar as attorney[']s fees are to be paid by the [Retirees] from the funds they recover through the relief granted herein. In accordance with [the Retirees'] request, [the ERS and the Board] are ordered to deduct said reasonable attorney's fees from the

9. HRS § 661–8, a subsection of HRS chapter 661, entitled "Actions by and against the State," provides as follows:

> **Interest.** No interest shall be allowed on any claim *up to the time of the rendition of judg-*

*ment* thereon by the court, *unless upon a contract expressly stipulating for the payment of interest, or upon a refund of a payment into the "litigated claims fund" as provided by law.*
(Emphases added.)

additional payments that will be made to the [Retirees]. Following a final resolution of this case, ... this court will make a final determination of the award of attorney's fees, both the amount and manner of calculation.

4. [The ERS and the Board] shall recalculate the monthly retirement and post retirement allowances of all members of the Chun class from two years prior to the filing of the complaint in *Chun v. Employees' Retirement System* in Civil No. 86–3904, and of the Southwood class from [two] years prior to the filing of the complaint in *Southwood v. Employees' Retirement System* in Civil No. 90–0510–02, in light of the recalculation of [the] AFC for all [Retirees].

5. [The ERS and the Board] shall make a lump sum payment to each [Retiree,] which represents the difference between the newly recalculated monthly retirement benefit each [Retiree] would have received pursuant to the recalculations noted hereinabove, and the monthly retirement benefit each class member received, from two years [prior to the] filing [of] the relevant complaint[s] ..., or the date of retirement to the date of this order.

On March 11, 1996, the circuit court entered a final judgment, reversing the Board's decision dated March 23, 1995, in favor of the Retirees and against the Board and the ERS. The ERS and the Board appealed the judgment. *Chun II,* 87 Hawai'i at 155, 952 P.2d at 1218. In *Chun II,* this court held that "the ERS (at the behest of its purported 'administrator') and 'the Board' (at the behest of the Attorney General) lacked the power to appeal the circuit court's final order and judgment." *Id.* at 157, 952 P.2d at 1220. Inasmuch as the Board and the ERS's appeal was dismissed, the circuit court's March 11, 1996 judgment remained the final judgment in the case. *See id.* at 177, 952 P.2d at 1240.

....

D. *The Retirees' And Khim's Motion For Attorney's Fees*

....

On July 15, 1998, the Retirees and Khim filed a Motion For Attorney's Fees. The Retirees and Khim moved to have Khim compensated in the amount of (1) one-third of all increases in retirement benefits retroactively calculated and paid to the Retirees and (2) a percentage of the future payments of the increase in retirement benefits to the Retirees.

In the memorandum in support of their motion, the Retirees and Khim criticized this court's adoption of the lodestar approach in *Montalvo [v. Chang],* 64 Haw. 345, 641 P.2d 1321, as being overly narrow and out of date....

On September 1, 1998, the Board and the ERS filed a memorandum in response to the Retirees' and Khim's motion. The Board and the ERS contended that the Retirees were improperly requesting a percentage of the common fund. In this regard, the Board and the ERS suggested that Hawai'i law required the circuit court to award attorney's fees pursuant to the lodestar method of calculating attorney's fees in class action lawsuits.

....

On October 21, 1998, the circuit court entered its findings of fact (FOFs), conclusions of law (COLs), and order, which included, *inter alia,* the following FOF:

8. The amount of the common fund is estimated to be between $3,000,000 and $5,000,000. [The] ERS estimates, based on Mr. Khim's proposed manner of computation, the common fund to be between $4,000,000 [and] $5,000,000. Mr. Khim claims that the ERS['s] estimate is overstated by approximately 20%.

The circuit court also entered, *inter alia,* the following COLs:

1. The court is bound to follow *Montalvo v. Chang,* 64 Haw. 345[, 641 P.2d 1321] (1982)[,] and its lodestar method for calculating reasonable attorney's fees.

2. Mr. Khim is entitled to 1,868.41 attorney hours[,] computed as follows:

| | |
|---|---|
| 2,266.75 | Claimed attorney hours |
| (300.00) | Overstated hours through 2/90 |

| | |
|---|---|
| 1,966.75 | Sub-total |
| | 5% adjustment based on Court's |
| (98.34) | estimate of overstated hours |
| **1,868.41** | **TOTAL HOURS ALLOWED** |

. . . .

5. As such, the lodestar amount is $373,682.00.

6. The lodestar is subject to adjustment upon consideration of two additional factors, "the contingent nature of success" and "the quality of an attorney's work."

. . . .

9. [T]he court concludes that the lodestar should be adjusted by a multiplier of 2.75 as requested by Mr. Khim.

10. The court hereby awards reasonable attorney's fees to Mr. Khim in the amount of $1,027,625.50 plus G[eneral] E[xcise] T[ax].

(Boldface in original.) Accordingly, in its October 21, 1998 order, the circuit court ordered that Khim be awarded attorney's fees in the amount of $1,027,625.50, plus general excise tax.

**10.** *Chun III* explained as follows:

Fee shifting cases generally arise out of statutory causes of action "that include provisions for attorney's fees-typically characterized as being 'reasonable' in amount-to be awarded to the prevailing party." Third Circuit Task Force Report on Attorney Fees, 108 F.R.D. [237,] 251.
92 Hawai'i at 441 n. 8, 992 P.2d at 136 n. 8.

**11.** *Chun III* explained that "[t]he 'percentage method' of calculating attorney's fees involves the calculation of fees as a straight percentage of the common fund." 92 Hawai'i at 441, 992 P.2d at 136 (citing *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1046 (Del.1996)).

*Chun III* further defined the "lodestar method" of calculating attorney's fees as follows:

In essence, the initial inquiry is "how many hours were spent in what manner by which attorneys." [*Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161,] 167 [ (3d Cir.1973) ("*Lindy I*") ]. The determination of time spent in performing services "within appropriately specific categories," *id.*, is followed by an estimate of its worth. "The value of an attorney's time generally is reflected in his normal billing rate." *Id.* But it may be "necessary to use several different rates for the different attorneys" and the reasonable rate of compensa-

The Retirees and Khim filed a timely notice of appeal on October 27, 1998.

*Chun III*, 92 Hawai'i at 435–38, 992 P.2d at 130–33 (some brackets added and some in original) (footnotes omitted).

▮ In *Chun III*, the Retirees argued, *inter alia*, that "the circuit court abused its discretion by declining to consider calculating Khim's attorney's fees as a pure percentage of the 'common fund' recovered by the Retirees[.]" *Id.* at 434, 992 P.2d at 129. On February 3, 2000, we issued our decision in *Chun III*, in which we disagreed with the Retirees' contentions "that the lodestar method of awarding attorney's fees in class action lawsuits should be limited to statutory 'fee shifting' [10] class actions and that the 'percentage method' of awarding attorney's fees should be applied in common fund cases such as the one at hand" and held "that the approach to be applied in awarding attorney's fees in class action lawsuits generally [is] left to the discretion of the trial judge." [11] *Id.* at 441, 992 P.2d at 136. The *Chun III* court reasoned as follows:

tion may differ "for different activities." *Id.* And when the hourly rate reached through the foregoing analysis is applied to the actual hours worked, a "reasonably objective basis for valuing an attorney's services" is derived. *Id.* The inquiry, however, does not end here, for other factors must be considered. The product of the first and second steps nevertheless serves as the "lodestar" of the ultimate fee award. *Id.* at 168.
*Montalvo*, 64 Haw. at 358–59, 641 P.2d at 1331. The lodestar may then be increased by a multiplier, as follows:
The first of the factors to be considered for possible adjustment of the "lodestar" determination is "the contingent nature of success," a factor which may be of special significance where "the attorney has no private agreement that guarantees payment even if no recovery is obtained." ["*Lindy I*," 487 F.2d at 168]. The second additional factor to be examined "is the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing" the "lodestar" figure. *Id.* If the court decides an adjustment is justified on this basis, it "should set forth as specifically as possible the facts that support ... [its] conclusion." *Id.* at 169.
*Id.* at 359, 641 P.2d at 1331 (some brackets added and some in original).
*Id.* at 441–42, 992 P.2d at 136–37.

" '[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms.' " *Id.* at 445, 992 P.2d at 140 (quoting *United States v. 8.0 Acres of Land,* 197 F.3d 24, 33 (1st Cir.1999) (quoting *In re Fidelity/Micron Securities Litig.,* 167 F.3d 735, 737 (1st Cir.1999))). Accordingly, we hold that, in common fund cases, the decision whether to employ the percentage method or the lodestar method be reposed within the discretion of the trial court. In so holding, we modify as follows the exclusive reliance on the lodestar method prescribed in *Montalvo.* To the extent that *Montalvo* dictates that the lodestar method alone may be used in calculating attorney's fees in common fund cases, we overrule it. However, we continue to adhere to *Montalvo's* explication of the mechanics of the lodestar method.

In *Brundidge [v. Glendale Fed. Bank,* 168 Ill.2d 235, 213 Ill.Dec. 563, 659 N.E.2d 909 (1995) ], the Illinois Supreme Court succinctly described the analysis to be undertaken by the trial court:

> Awarding attorney fees to plaintiffs' counsel based on a percentage of the fund held by the court is, overall, a fair and expeditious method that reflects the economics of legal practice and equitably compensates counsel for the time, effort, and risks associated with representing the plaintiff class. However, because percentage-of-the-fund recovery suffers from certain infirmities, there may be circumstances where the lodestar method will remain the more appropriate method of awarding fees.... As observed in *Rawlings[v. Prudential–Bache Properties, Inc.,* 9 F.3d 513,] 516 [ (6th Cir.1993) ]:
>
> > "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.... The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that

the district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them."

*Brundidge,* 213 Ill.Dec. 563, 659 N.E.2d at 914. Thus, placing the decision whether to apply the percentage method or the lodestar method within the discretion of the trial court will allow the trial court to identify the fee award that most equitably compensates plaintiffs' counsel, while at the same time protecting the interests of the class members for whose benefit the common fund was created.

*Id.* at 445, 992 P.2d at 140.

Based on the foregoing, this court vacated the circuit court's order awarding attorney's fees and remanded the matter to the circuit court "for further proceedings regarding the method of calculating the award of attorney's fees to Khim." *Chun III,* 92 Hawai'i at 446, 992 P.2d at 141.

### B. *Order Granting Fees and Interest*

On July 27, 2000, the Retirees' filed their motion on remand for payment of attorney's fees and interest on sum disbursed to their class [hereinafter, "motion for fees on remand"] and their memorandum in support of the motion. In the motion, the Retirees moved for the circuit court "for attorney's fees to be awarded to legal counsel, to be calculated on a percentage basis of 33.33% on the back retirement pay already disbursed to the [Retirees] ... only, with no attorney's fees being calculated upon the future retirement benefit increases awarded the [Retirees]." The Retirees "further move[d] that the [ERS] be ordered to pay interest to [the Teachers] ... on the principle amounts ordered in the judgment herein." In their memorandum in support of the motion, the Retirees asserted (1) that the circuit court "should recalculate attorney's fees on a percentage of the common fund basis rather than the *Montalvo* lodestar basis in order to comply with [*Chun III*]," (2) that the ERS "violated HRS[ ] § 478–3[, *see supra* note 6,]

by failing to pay postjudgment interest on the monies disbursed in 1999 to satisfy the [circuit court's] March 11, 1996 final judgment herein enforcing the March 4, 1996 order requiring, *inter alia*, back retirement pay to [the Retirees]," and (3) that "interest on back retirement pay should be paid to [the Teachers] pursuant to [the] stipulation executed by [the Retirees and the ERS]."

On August 22, 2000, the ERS filed its memorandum in opposition to the Retirees' motion for fees on remand, which recited the following arguments: (1) that the ERS has "standing to challenge and criticize the calculation of attorney's fees; (2) that Khim's "motion for additional attorney's fees should be denied," inasmuch as (a) the circuit court "has a duty to protect the interests of the individual class members," (b) "the class members have not been provided with notice or an opportunity to be heard," and (c) Khim "is not entitled to additional attorney's fees" because (i) he "mischaracterizes the lodestar method in order to argue for use of the percentage method," (ii) "an award of 33 and 1/3 percent of the fund would be extraordinary," and (iii) the circuit court's previous "lodestar calculation provided ... Khim with adequate compensation"; (3) that, "to the extent [that] the motion seeks postjudgment interest, it should also be denied," insofar as (a) "this issue is not properly before the court" and (b) "in any event, the request for interest should be denied" because (i) "there was no judgment for a determined amount" and (ii) "the stipulation does not provide [the Retirees] with a basis upon which [the circuit] court should award interest."

On August 24, 2000, the Retirees filed a reply memorandum in support of their motion for fees on remand, asserting that the ERS's arguments were without merit because (1) "backup awards are money judgments" and (2) "attorney's fees are calculated on the gross amount of the [common] fund."

On August 25, 2000, the circuit court conducted a hearing on the Retirees' motion for fees on remand. After entertaining arguments by both parties, the circuit court requested further briefing and took the matter under advisement. On August 31, 2000, the ERS filed the declaration of David Shimabu-

kuro, the Administrator of the ERS. On September 15, 2000, the Retirees filed the affidavit of Bill Southwood, who is one of the members of the Retirees' class.

On October 18, 2000, the circuit court entered the order granting fees and interest. The circuit court ruled in relevant part as follows:

I. *ATTORNEYS' FEES*

1. The [ERS] contended that it was necessary to provide class members with notice of these remand proceedings on attorneys' fees as a matter of the opposing class action members' constitutional due process rights. The Court rejects this argument because a) while the ERS does have standing to contest common fund attorneys' fees, as set forth in [*Chun III*], it cannot raise due process claims of the opposing party; b) the notice requirement was met before the original circuit court ruling on fees; and c) this proceeding as to the fees is limited to the instructions of the Hawai'i Supreme Court on remand which did not implicate notice requirements.

2. On remand, the trial court is to exercise sound discretion whether to apply the percentage or lodestar method, thus identifying "the fee award that most equitably compensates [Khim], while at the same time protecting the interests of the class members for whose benefit the common fund was created." [*Chun III*, 92 Hawai'i at 445[, 992 P.2d at 142]. In so doing, this Court adopts the findings regarding factors set forth by the Honorable Gail Nakatani in her order of October 21, 1998, originally awarding fees of $1,027,625.50 plus GET under the lodestar method. The Court completes the analysis by determining the ascertainable amount of the common fund, establishing the appropriate percentage to be applied, and comparing the percentage with the lodestar method.

3. The Court finds the ERS has paid a total of $4,853,755 inclusive of the stipulated "premium" paid to the principals and vice-principals computed from the 1991 decision as to them and inclusive of the amount the ERS contends is an offset computed from Judge Nakatani's order recovering the amount that was due as an

employee contribution to the retirement fund.

4. The ERS claims the "premium" should not be calculated as part of the common fund. The Retirees claim it should be. The stipulation expressly says the amount is not postjudgment interest. On the other hand, the retirees do not seek postjudgment interest as to the principals and vice principals. Further, the ERS claims the retirees are not entitled to postjudgment interest (*see* decision *infra*) for the [T]eachers who are claiming it.

Under these circumstances, where the parties agree the amount of the premium is not postjudgment interest, this Court finds that the premium is indeed an amount that [Khim] negotiated for the principals and vice-principals and therefore the Court finds it should be included in the common fund amount that counsel obtained in representing the classes.

5. The Court does not find that postjudgment interest (awarded to the [T]eachers *infra*) is part of the common fund amount for purposes of calculating attorneys' fees.

6. The amount referred to in the David Shimabukuro declarations as the offset ($691,916) is the amount that the [R]etirees properly would have been assessed or were required to contribute had the ERS calculations been the proper amounts in the beginning. The August 31, 2000 Declaration of David Shimabukuro indicates this offset was never returned to the [R]etirees in any form, including as part of proceeds to which class members were entitled by virtue of choosing the option 5 retirement form of the contributory system (which returns in lump sum the contributions of the employee at the outset of retirement).

The competing declaration of named Plaintiff Bill Southwood asserts that most of the class members who were in the contributory retirement system elected option 5 and therefore the offset amounts should have been returned to the retirees after the ERS had deducted those amounts pursuant to Judge Nakatani's order as the employee's retirement contribution. The specific number of option 5 (and/or 4) members in the class is not determined and thus this Court finds no basis for contradicting the figures contained in the Shimabukuro declarations.

This Court finds that $691,916 is the amount that was offset or completely recaptured by [the] ERS consistent with paragraph 6 on page 14 of Judge Nakatani's March 4, 1996 order. This Court further finds that the offset amount is not part of the common fund amount because it was not paid to class members.

The [R]etirees' reliance on *Williams v. MGM–Pathe*, 129 F.3d 1026 (9th Cir. 1997)[,] is misplaced. There the Ninth Circuit held that the basis for the common fund was to be the gross amount recovered for the class, not the amount of the claims filed against it, even if that meant that the unclaimed portion would be returned to defendants. This Court is basing the ascertained common fund on the gross amount available to be paid to the retirees. Where, as here, the order from which the gross amount can be determined expressly eliminates that portion contained in the offset (*i.e.*, paragraph 6 of the order), inclusion of that amount would inaccurately and improperly inflate the common fund figure. Merely because the Shimabukuro declaration uses the term "net amount" does not make the excluded amount cognizable under the Ninth Circuit analysis.

7. K[h]im asserts that the contingency fee contract of 1/3 that he has with the [Retirees] should be the percentage this Court adopts if awarding fees under the percentage method. He argues such percentage is customary, relying on affidavits of attorneys and the Intermediate Court of Appeals decision, *In re Chow* [3 Haw.App. 577] 656 P.2d 105 (Haw.App.1982), which is not a common fund nor class action. In contrast, [the] ERS relies upon federal class action case law to suggest the appropriate percentage should be 25% as a benchmark, adjustable for special circumstances, *e.g.*, *Torrisi v. Tucson Elec[.] Power Co.*, 8 F.3d 1370 (9th Cir.1993); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272–73 (9th Cir.1989). The

Court finds the federal cases to be persuasive and further finds no peculiar circumstances to merit greater than 25% of the common fund. (The few contingency fee contracts with the [Retirees] herein can be honored separately, as was the case in *Graulty, id.* at 272.)

8. Using 25% under the percentage method and determining that the amount of the common fund excludes the offset and includes the premium, the calculation is as follows: 25% of $4,161,839 is $1,040,459.70 for fees.

9. In the event this Court's analysis is in error and the common fund is deemed to be other than as aforesaid, the alternative figures are as follows:

25% of $4,853,755 = $1,213,438.70 (total with premium and offset)

25% of $4,636,982 = $1,159,245.50 (total less premium)

25% of $4,161,839 = $1,040,459.70 (total less offset as in finding 8)

25% of $3,945,066 = $986,256.50 (total less premium and offset)

10. The percentage on remand must be compared with the lodestar method figures which are as follows:

$1,070,436 = lodestar amount actually paid (including GET as per Judge Nakatani's order)

$1,027,625.50 = lodestar amount less GET

11. This Court normally does not award GET finding that attorneys, not their clients, are responsible for general excise taxes, but the award of GET is the law of the case herein and will not be disturbed. In addition, it is not contested by any party.

12. The comparison between lodestar and percentage is $12,834.20 (exclusive of GET calculation) more under the percentage method as applied to this Court's determination of the common fund amount. (This does not calculate the additional amount due on the 1/3 contingency fee for the [Retirees], but the Court finds that sum to be negligible for comparison purposes.)

13. This Court finds that the original lodestar amount of fees was a fair and just compensation for both the amount of work and the results achieved. That notwithstanding, based upon the above findings this Court is persuaded that the additional sum of $12,834.20 plus GET plus an additional 8.33% of total amounts paid to the [Retirees] (33.33% minus 25% = 8.33%) will fully and equitably compensate [Khim] while protecting the interests of the class members for whose benefit the common fund was created.

## II. INTEREST

14. The [Retirees] during these remand proceedings on attorneys' fees have also requested an award for postjudgment interest for the [Teachers]. The ERS objected on the grounds that the remand was limited to attorneys' fees. This Court agrees with [the] ERS that remand was limited to the issue of attorneys' fees but also agrees with the [Retirees] that there is nothing to preclude their raising the postjudgment interest matter now that the circuit court is reinvested with jurisdiction following remand. Indeed, this court cannot think of a more judicially efficient way to deal with the matter, and requiring [the Retirees] to file a separate motion on that issue would improperly elevate form over content to no good end. Therefore, this Court entertains the request for postjudgment interest.

15. [The] ERS claims the class action cannot admit of a postjudgment interest award because it arises out of an agency appeal involving [the] interpretation of [a] statute and under those circumstances the State has not waived sovereign immunity as to postjudgment interest. This Court rejects that argument. The underlying decision dealt with the amount of money owed [to the R]etirees under the retirement statute. The Hawai'i State Constitution, Article 16, Section 2, defines the employee and [the] ERS relationship as contractual, which cannot be diminished. Thus, the action is in the nature of assumpsit, and postjudgment interest accrues pursuant to HRS Section 478–3.

16. [The] ERS cites *Harada v. Ellis,* 60 Haw. 467 [591 P.2d 1060] (1979)[,] for the proposition that an award of statutory interest must be predicated on a determined amount, and the final orders and judgment herein did not contain a sum certain. The Court rejects this argument, finding that *Harada* denied postjudgment interest in a situation where there is no indebtedness (*e.g.,* escrow funds) whereas here the ERS did owe money to class members, and back retirement benefits had to be recalculated and specific amounts were paid. The final orders and judgments in this action determined with specificity how the sum certain was to be calculated and properly left the workout to the ERS. Indeed, proof that the sum certain was clear is found in the declarations of Mr. Shimabukuro on remand in which he specifically set forth the amounts paid pursuant to the final orders. That is precisely the point of an ascertainable common fund which generated the remand proceedings. Thus, *Harada* is not applicable.

17. Having found that postjudgment interest is applicable herein, this Court now turns to the disputed date of the judgment triggering the statutory interest. [The] ERS argues that the March 11, 1996 judgment cannot be the triggering date because the later order of Judge Nakatani denying [the Retirees'] motion to hold [the] ERS in contempt for failure to pay the judgment expressly found no payment could be made until the attorneys' fees issue was decided (because the fees were to be paid from the judgment award; that is deducted from the common fund).

18. This Court finds that the order denying contempt for failure to pay under those circumstances does not prohibit the date of judgment as to the [T]eachers from being March 11, 1996. Indeed, the Hawai'i Supreme Court, in deciding the appeal in [*Chun II,* 87 Hawai'i at 155, 952 P.2d at 1218], described the "final judgment entered on March 11, 1996" as a basis for the appeal. Thus, it is precedent that the final judgment is March 11, 1996.

19. Therefore, this Court concludes that the ERS must pay statutory interest (10% per annum) pursuant to HRS Section 478–3 to the [Teachers] ... on the amount of the final judgment attributable to them commencing March 11, 1996, and ceasing on the actual date that said retirement pay was actually paid.

20. Alternatively, the [Retirees] asked for this Court to import to the [Teachers] the stipulation interest between [the] ERS and the [P]rincipals and [V]ice-principals establishing a premium to be paid on the amount of the 1991 judgment as to them. [The Retirees] contend that said stipulation must [pertain] to all classes once the action was consolidated. This Court rejects the argument, finding that the consolidation did not nor could it expand the stipulation and further finding that to do so would be tantamount to imposing prejudgment interest, which by law is not allowed against the State, because the [T]eachers did not even obtain final judgment until March 11, 1996.

NOW THEREFORE, BASED UPON THE ABOVE FINDINGS AND CONCLUSIONS, THIS COURT ORDERS, ADJUDGES AND DECREES THAT

1. [The] ERS pay statutory interest at the rate of 10% per annum, pursuant to HRS Section 478–3, to the [Teachers] ... on the amount of the final judgment attributable to each one of them from March 11, 1996, ceasing on the actual date that the back retirement pay was actually paid to them; and

2. Awards [Khim] on remand ... additional attorney[']s fees of $12,834.20 plus GET thereon, plus an additional 8.33% of the amounts paid to the [Retirees] plus GET thereon, all to be paid out of future retirement benefits.

■ On November 14, 2000, the ERS timely filed a notice of appeal from the October 18, 2000 order granting fees and interest.[12] On November 15, 2000, the Retirees

---

12. A postjudgment order is an appealable final order under HRS § 641-1(a) (1993) if the order finally determines the postjudgment proceeding.

*Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.,* 68 Haw. 368, 369–70, 714 P.2d 936, 937 (1986). In the present matter, the

timely filed a notice of appeal from the same order. *See supra* note 12. On January 30, 2001, this court ordered consolidation of the foregoing appeals for briefing and disposition under Supreme Court No. 23892. *See supra* note 1.

### C. *Order Granting Stay Of Proceedings*

On December 19, 2000, the ERS filed a motion for partial stay of proceedings to enforce postjudgment order pending appeal and a memorandum in support of the motion. In its memorandum in support of the motion, the ERS contended (1) that Hawai'i Rules of Civil Procedure (HRCP) Rule 62 (2004) "provides for a stay pending appeal" and (2) that the ERS is "likely to prevail on appeal, and a stay is necessary to prevent undue prejudice to the ERS. . . ." On January 17, 2001, the Retirees filed a response to the ERS's motion. In their response, the Retirees contended that, "in granting a stay pending appeal[,] . . . [the circuit] court [should] clarify . . . that postjudgment interest shall be paid upon the money ordered to be paid in the October 18, 2000 order, should [the Retirees] prevail on appeal." On January 22, 2001, the ERS filed a reply memorandum, asserting (1) that the Retirees' "response to the motion for a stay appears to indicate that [they] do not oppose the motion" and (2) "that there is no statutory or common law authority for awarding interest[ ] upon interest— *i.e.,* compound interest," insofar as "compound interest in a postjudgment situation is non-recoverable, precisely because postjudgment interest is statutory, and there is no statutory (or common law) basis for compound interest."

On January 25, 2001, the circuit court conducted a hearing on the ERS's motion. On February 14, 2001, the circuit court entered an order granting a stay of the proceedings. The circuit court reasoned as follows:

> The motion for the stay itself was unopposed. [The Retirees] took the position that any stay should be conditioned upon the [circuit c]ourt ordering that in the

event that [they] prevailed on appeal on the "postjudgment interest" issue, that the ERS shall pay postjudgment interest, dating from October 18, 2000, the date that this [c]ourt entered its Order Following Remand from the Hawai'i Supreme Court Regarding Attorney's Fees and Postjudgment Interest for Retired Teachers of the Class Action, on the interest the [circuit c]ourt ordered the ERS to calculate and pay in that order.

[The Retirees] argued that postjudgment interest was due on the interest awarded in the [circuit c]ourt's October 18, 2000 order which [the Retirees] argued was the equivalent of a money judgment. [The Retirees] also argued, *inter alia,* that such a condition was fair and reasonable, because [they] would lose the use of the interest this [c]ourt ordered paid during the time between this [c]ourt's October 18, 2000 order and the conclusion of the appeal, and were a stay granted without such relief, they would not be compensated for that loss.

The ERS argued that because the sums the [circuit c]ourt ordered the ERS to calculate and pay in its October 18, 2000 order constituted postjudgment interest, the relief requested by [the Retirees] would have amounted to interest upon interest. The ERS argued that interest upon interest was not permitted pursuant to statute or common law.

The [circuit c]ourt having considered the arguments of the parties, and their submissions, specifically finds that to grant the condition for a stay requested by [the Retirees] would constitute the awarding of interest upon interest, and that is not authorized by law. Thus, the [circuit c]ourt grants the Motion for a Stay requested by the ERS without condition. That portion of this [c]ourt's Order Following Remand from the Hawai'i Supreme Court Regarding Attorney's Fees and Postjudgment Interest for Retired Teachers of the Class

---

circuit court entered final judgment on the complaints on March 11, 1996. The proceeding to recalculate Khim's attorney's fees and to determine postjudgment interest on the March 11, 1996 judgment was a postjudgment proceeding

that was finally determined upon entry of the October 18, 2000 order granting fees and interest. Thus, the October 18, 2000 order granting fees and interest is an appealable final order under HRS § 641–1(a).

Action ordering the ERS to calculate and pay postjudgment interest, is stayed pending resolution of the ERS's appeal of this matter.

On March 9, 2001, the Retirees timely filed a notice of appeal from the order granting stay of proceedings.[13] On October 29, 2004, we ordered consolidation of the foregoing appeal with the November 14 and 15, 2000 appeals (*i.e.*, the already consolidated No. 23892) for disposition under No. 23892. *See supra* note 2.

## II. *STANDARDS OF REVIEW*

### A. *Findings Of Fact And Conclusions Of Law*

▪▪▪ ... In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. *State v. Hutch*, 75 Haw. 307, 328, 861 P.2d 11, 22 (1993) (citations omitted). "An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citations and internal quotation marks omitted); *see also State v. Batson*, 73 Haw. 236, 246, 831 P.2d 924, 930, reconsideration denied, 73 Haw. 625, 834 P.2d 1315 (1992). . . .

" 'A COL is not binding upon an appellate court and is freely reviewable for its correctness.' " *AIG Hawai'i Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 628, 851 P.2d 321, 326 (1993) (quoting *Amfac, Inc. [v. Waikiki Beachcomber Inv. Co.]*, 74 Haw. 85,] 119, 839 P.2d [10,] 28 [ (1992) ] ). This court ordinarily reviews COLs under the right/wrong standard. *In re Estate of Holt*, 75 Haw. 224, 232, 857 P.2d 1355,

1359, *reconsideration denied*, 75 Haw. 580, 863 P.2d 989 (1993) (citation omitted). Thus, " '[a] COL that is supported by the trial court's [FOFs] and that reflects an application of the correct rule of law will not be overturned.' " *Estate of Caraang*, 74 Haw. at 628–29, 851 P.2d at 326 (quoting *Amfac, Inc.*, 74 Haw. at 119, 839 P.2d at 29). "However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Id.* at 629, 851 P.2d at 326 (quoting *Amfac, Inc.*, 74 Haw. at 119, 839 P.2d at 29) (internal quotation marks omitted).

*Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004) (quoting *State v. Furutani*, 76 Hawai'i 172, 179–80, 873 P.2d 51, 58–59 (1994)).

### B. *Award Of Postjudgment Interest*

▪▪▪ This court reviews rulings on interest pursuant to HRS §§ 478–3 and 636–16 (1993) for abuse of discretion. *See Sussel v. Civil Serv. Comm'n*, 74 Haw. 599, 619, 851 P.2d 311, 321 (1993).

The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Metcalf v. Voluntary Employees' Benefit Ass'n of Hawaii*, 99 Hawai'i 53, 57, 52 P.3d 823, 827 (2002) (quoting *Molinar v. Schweizer*, 95 Hawai'i 331, 335, 22 P.3d 978, 982

---

13. In the present matter, the circuit court entered final judgment on the complaints on March 11, 1996, and the proceedings to recalculate Khim's attorney's fees and to determine postjudgment interest on the judgment was a postjudgment proceeding that was finally determined upon entry of the October 18, 2000 order granting fees and interest. *See supra* note 12. The proceeding to stay execution of the interest portion of the October 18, 2000 order was a proceeding incidental to enforcement of the order. Thus, the order granting stay of proceedings is an appealable final order under HRS § 641–1(a) because it finally determined the postjudgment proceeding to stay execution of the interest por-

tion of the October 18, 2000 order granting fees and interest. *Id.*

The filing of the November 14 and 15, 2000 notices of appeal in No. 23892 did not divest the circuit court of jurisdiction to resolve the December 19, 2000 motion for stay pending appeal. *See TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999) ("Notwithstanding the general effect of the filing of a notice of appeal [ (*i.e.*, divesting the trial court of jurisdiction over the appealed case) ], the trial court retains jurisdiction to determine matters collateral or incidental to the judgment, and may act in aid of the appeal.").

(2001) (quoting *Canalez v. Bob's Appliance*, 89 Hawai'i 292, 299, 972 P.2d 295, 302 (1999))).

### C. *Award Of Attorneys' Fees*

 "This court 'review[s] the ... denial and granting of attorney's fees under the abuse of ... discretion standard.'" *Eastman v. McGowan*, 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (quoting *Weinberg v. Mauch*, 78 Hawai'i 40, 52–53, 890 P.2d 277, 289–290, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995)). *See also Coll v. McCarthy,* 72 Haw. 20, 28, 804 P.2d 881, 887 (1991). The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. *See First Hawaiian Bank v. Smith,* 52 Haw. 591, 592, 483 P.2d 185, 186 (1971); *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 244, 413 P.2d 242, 245, *reh'g denied,* 49 Haw. 257, 414 P.2d 82 (1966); *Powers v. Shaw,* 1 Haw.App. 374, 377, 619 P.2d 1098, 1101 (1980). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (internal quotation signals and citations omitted).

*Chun III,* 92 Hawai'i at 439, 992 P.2d at 134 (quoting *Piedvache v. Knabusch,* 88 Hawai'i 115, 118, 962 P.2d 374, 377 (1998)) (brackets in original) (some ellipsis points added and some in original).

### III. *DISCUSSION*

#### A. *The Circuit Court Abused Its Discretion In Awarding Postjudgment Interest Because Sovereign Immunity Bars Such An Award.*

 On appeal, the ERS argues, *inter alia,* that the circuit court erred in entering

the order granting fees and interest because "sovereign immunity bars the award of postjudgment interest." The Retirees counter: (1) that "HRS[ ] § 661–8[, *see supra* note 9,] clearly waives sovereign immunity of the State ... for postjudgment interest"; (2) that "HRS[ ] § 88–22 [ (1993) [14] ] ... waiv[es] sovereign immunity against the ERS"; (3) that the ERS "admitted through [its] own action[ ] in paying the principal debt owed under the March 4, 1996 order and the March 11, 1996 order and judgment that said order and judgment were money judgments that are enforceable against the ERS and are not avoidable under the doctrine of sovereign immunity"; (4) that "Article XVI, Section 2 of the Hawai'i State Constitution provides that the relationship between the [Retirees] and the [ERS] ... shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired" and therefore "waives any sovereign immunity that the State ... and its instrumentalit[y,] the ERS, ... may have against liabilities of the [Retirees], all of whom are members of the ERS"; (5) that the legislative history of the Hawai'i Constitution reflects that the framers "envisioned that the [ERS] would be subject to legal action if the [ERS] reduced retirement benefits that were attributable to past services," betokening "a clear waiver of sovereign immunity for legal actions seeking regress for a reduction in benefits that are attributable to past services"; and (6) that insofar as the ERS has described its relationship with the Retirees as contractual, and because HRS § 88–127 (1993) [15] provides that "the benefits to be paid by the ERS are guaranteed by the State," the ERS has admitted "that the State is liable for payments to the [Retirees], *i.e.,* [that] the State is not

---

14. HRS § 88–22 provides:

 **System established; name.** There shall be a retirement system for the purpose of providing retirement allowances and other benefits for employees. It shall have the powers and privileges of a corporation and *shall be known as the "Employees' Retirement System of the State of Hawaii" and by that name may sue or be sued,* transact all of its business, invest all of its fund, and hold all of its cash and securities and other property.

(Emphasis added.)

15. HRS § 88–127 provides in relevant part:

 **Guaranty.** Regular interest charges payable, the creation and maintenance of reserves in the pension accumulation fund and the maintenance of annuity reserves and pension reserves as provided for the payment of all pensions, annuities, retirement allowances, refunds and other benefits granted under this part, and all expenses in connection with the administration and operation of the system

immune as the sovereign from claims for payments due under HRS[ ] Chapter 88." We agree with the ERS.

"[I]t is well established that the State's liability is limited by its sovereign immunity, except where there has been a 'clear relinquishment' of immunity and the State has consented to be sued." *Taylor–Rice v. State*, 105 Hawai'i 104, 109–10, 94 P.3d 659, 664–65 (2004) (citing *Bush v. Watson*, 81 Hawai'i 474, 481, 918 P.2d 1130, 1137, *reconsideration denied*, 82 Hawai'i 156, 920 P.2d 370 (1996), *cert. denied*, 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997) ("[T]he sovereign state is immune from suit for money damages, except where there has been a 'clear relinquishment' of immunity and the State has consented to be sued." (Citations omitted.))). Nevertheless, "the State has clearly relinquished its immunity from suit as to '[a]ll claims against the State founded ... upon any contract, express or implied, with the State[.]' " *Fought & Co., Inc. v. Steel Engineering and Erection, Inc.*, 87 Hawai'i 37, 55, 951 P.2d 487, 505 (1998) (citing HRS § 661–1, *see supra* note 8).

In the present matter, the circuit court ruled that sovereign immunity did not bar postjudgment interest based on the following reasoning:

The underlying decision dealt with the amount of money owed [to the R]etirees under the retirement statute. The Hawai'i State Constitution, Article 16, Section 2, defines the employee and [the] ERS relationship as contractual, which cannot be diminished. Thus, the action is in the nature of assumpsit, and postjudgment interest accrues pursuant to HRS Section 478–3[, *see supra* note 6].

The circuit court, however, failed to consider the full scope of the State's waiver of sovereign immunity. *Taylor–Rice* described the relevant legal principles as follows:

In determining the extent to which the State has waived its immunity, this court has stated that "federal immunity principles ... are 'relevant to our own principles of sovereign immunity.' " *Bush*, 81 Hawai'i at 481, 918 P.2d at 1137 (citation omitted); *see also Whittington v. State*, 72 Haw. 77, 78, 806 P.2d 957, 957 (1991) (noting that the STLA was modeled on the preceding and parallel federal act); *Figueroa v. State*, 61 Haw. 369, 383–84, 604 P.2d 1198, 1206 (1979) (stating that "the [STLA] was modeled after the Federal Tort Claims Act" (citation omitted)). Thus, we turn to federal cases for guidance in construing the applicable statutes pertaining to the State's sovereign immunity.

Federal courts have held that, when construing statutes regarding sovereign immunity, the following principles apply: (1) "*a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign* [,]" *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citations omitted); (2) *a waiver of sovereign immunity "must be unequivocally expressed in statutory text,"* id. (citation omitted); (3) "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text[,]" *id.;* (4) "*[i]t is not [a court's] right to extend the waiver of sovereign immunity more broadly tha[n] has been directed by the Congress* [,]" *United States v. Shaw*, 309 U.S. 495, 502, 60 S.Ct. 659, 84 L.Ed. 888 (1940); and (5) *sovereign immunity "is not to be waived by policy arguments* [,]"

are made obligations of the State and of the respective counties. All income, interest and dividends derived from deposits and investments authorized by this part shall be used for the payment of such obligations. After June 30, 1964, the income shall include capital gains or losses, whether realized or unrealized, in the value of the retirement system assets as taken from time to time thereafter by the board of trustees. Any amount derived therefrom, which, when combined with appropriation requirements as certified by the board under the provisions of this part,

would exceed the amount required to provide for such obligations, may be used to reduce the appropriations otherwise required. It is hereby declared that any and all sums contributed or paid from whatever source to the system for the funds created by this part, and all funds of the system including any and all interest and earnings of the same, are and shall be held in trust by the board for the exclusive use and benefit of the system and for the members of the system and shall not be subject to appropriation for any other purpose whatsoever.

*United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 663, 67 S.Ct. 601, 91 L.Ed. 577 (1947).

Specifically regarding interest on damages, federal courts have noted that *"interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." United States v. Aisenberg*, 358 F.3d 1327, 1345 (11th Cir. 2004) (citations omitted); *see also United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir.1995). Moreover,

> *[t]here can be no consent by implication* or by use of ambiguous language. Nor can an intent on the part of the framers of a statute ... to permit the recovery of interest suffice where the intent is not translated into affirmative statutory ... terms. *The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.*

*Spawn v. W. Bank–Westheimer*, 989 F.2d 830, 834 (5th Cir.) (citation omitted), *reh'g denied*, 989 F.2d 830 (1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1048, 127 L.Ed.2d 371 (1994). *Additionally, "a general waiver of immunity to suit[ ]" does not constitute an express waiver of immunity from an award of interest. Id.* at 833 (citation omitted); *see also Larson v. United States*, 274 F.3d 643, 645 (1st Cir.2001).

*Taylor–Rice*, 105 Hawai'i at 110, 94 P.3d at 665 (emphases added) (brackets in original). We also noted that *"HRS § 478–3 does not apply to the State," Taylor–Rice*, 105 Hawai'i at 111, 94 P.3d at 666 (emphasis added), quoting *Littleton v. State*, 6 Haw.App. 70, 708 P.2d 829, *aff'd*, 68 Haw. 220, 708 P.2d 824 (1985), with approval as follows:

> ["*I]t is a general principle of law that statutory laws of general application are not applicable to the State unless the legislature in the enactment of such laws made them explicitly applicable to the State.*["] *Big Island Small Ranchers Ass'n v. State*, 60 Haw. 228, 236, 588 P.2d 430, 436 (1978) (quoting *A.C. Chock, Ltd. v. Kaneshiro*, 51

Haw. 87, 89, 451 P.2d 809, 811 (1969)).] *Here, HRS § 478–[3] is a statute of general application and there is nothing making it explicitly applicable to the State. Taylor–Rice*, 105 Hawai'i at 111, 94 P.3d at 666 (quoting *Littleton*, 6 Haw.App. at 73, 708 P.2d at 831–32) (some emphases added and some in original) (footnotes omitted).

Thus, notwithstanding our holding in *Fought* that, pursuant to HRS § 661–1, *see supra* note 8, the State has waived immunity to suits based on contract claims, HRS § 478–3 does *not* expressly waive the State's immunity from postjudgment interest. *See supra* note 6. In fact, there is *no statutory authority* that expressly relinquishes the State's immunity from postjudgment interest with respect to claims for relief predicated upon HRS § 661–1. By contrast, HRS § 662–8 (1993) [16] *expressly* waives the State's sovereign immunity as to postjudgment interest on tort claims. Similarly, HRS § 661–8 *expressly* waives the State's immunity from *prejudgment* interest on claims based "upon a contract expressly stipulating for the payment of interest, or upon a refund of a payment into the 'litigated claims fund' as provided by law." *See supra* note 9.

Thus, insofar as the State has not expressly and statutorily waived its sovereign immunity from postjudgment interest in suits brought pursuant to HRS § 661–1, we hold that the State is immune from awards of HRS § 478–3 postjudgment interest in HRS § 661–1 actions. *See Taylor–Rice*, 105 Hawai'i at 110, 94 P.3d at 665. Accordingly, the circuit court erred in ordering that "[the] ERS pay statutory interest at the rate of 10% per annum, pursuant to HRS Section 478–3." *See supra* section I.B.

**B.** *The Circuit Court Did Not Abuse Its Discretion In Excluding Postjudgment Interest From Its Calculation Of Attorneys' Fees Because The ERS Is Immune From Postjudgment Interest.*

In their cross-appeal of the order granting fees and interest, *see supra* note 1, the Retir-

---

16. HRS § 662–8 provides as follows:

> **Interest.** On all final judgments rendered against the State in actions instituted under this chapter [ (*i.e.,* HRS chapter 662, the "State Tort Liability Act") ], interest shall be comput-

ed at the rate of four per cent a year from the date of judgment up to, but not exceeding, thirty days after the date of approval of any appropriation act providing for payment of the judgment.

ees allege, *inter alia*, that the circuit court should not have excluded an "award of post-judgment interest" "from the 'percentage of the common fund' calculation of attorney's fees." But, as discussed *supra* in section III.A, the ERS is immune from HRS § 478–3 postjudgment interest in this HRS § 661–1 suit. *See supra* notes 6 and 8. We therefore hold that the circuit court did not err in excluding postjudgment interest from its calculation of attorneys' fees.

C. *The Circuit Court Did Not Abuse Its Discretion In Excluding The "Offset" From Its Calculation Of Attorneys' Fees Because The March 4, 1996 Final Order Expressly Limited Attorneys' Fees By Excluding The Offset.*

The Retirees urge that the circuit court should not have excluded "the gross amount recovered for [the Retirees]" "from the percentage of the common fund calculation of attorney's fees." We disagree.

As noted *supra* in section I.A, in its March 4, 1996 final order, the circuit court awarded attorneys' fees to the Retirees "*only* insofar as attorneys['] fees are to be paid by the [Retirees] *from the funds they recover through the relief granted herein.*" (Emphases added.) The final order recited in relevant part as follows:

6. Because the lump sum payment of earned summer salary paid upon retirement shall be includable as compensation, but contributions from lump sum payment of earned summer salary had been returned by the [ERS] to each member of the [Retirees], *[the ERS] shall withhold, from the lump sum payment to each class member[,] ... an amount equal to the contribution which had been returned to each class member,* in order that the lump sum payment may be properly treated as compensation for the purpose of calculat-

ing [average final compensation (]AFC[) ]. This provision shall apply to contributory members only.

In other words, the final order of necessity limited the Retirees' award of attorneys' fees as a function of the net sum recovered as a result of their lawsuits and expressly deducted the foregoing "offset" from the lump sum payment to which each class member was entitled. Thus, we hold that the circuit court did not abuse its discretion in entering the order granting fees and interest, which stated, *inter alia*, as follows:

This Court is basing the ascertained common fund on *the gross amount available to be paid to the Retirees. Where, as here, the order from which the gross amount can be determined expressly eliminates that portion contained in the offset (i.e., paragraph 6 of the order), inclusion of that amount would inaccurately and improperly inflate the common fund figure.*

(Emphases added.)

D. *The Circuit Court Did Not Abuse Its Discretion In Ordering That Attorneys' Fees Be Set At Twenty–Five Percent Of The Common Fund Because No Controlling Precedent Required The Circuit Court To Do Otherwise.*

The Retirees contend that the circuit court erred in allowing attorneys' fees only at the rate of twenty-five percent of the common fund, inasmuch as they argue that the circuit court should not have applied "the federal court's precedent rather than [the standards of] Hawai'i appellate court[s, which were] enunciated in [*In re Chow*, 3 Haw.App. 577, 656 P.2d 105 (1982) ]."[17] *Chow* arose out of an appeal from a medical malpractice action by the plaintiffs' attorney, who argued, *inter alia*, that the circuit "court abuse[d] its

17. In its order granting fees and interest, the circuit court rejected *Chow* in favor of "federal class action case law," to wit, *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir.1993), and *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir.1989). In *Torrisi* and *Graulty,* the United States Court of Appeals for the Ninth Circuit noted that, "in common fund cases[,] ... we have established 25% of the common fund as the 'benchmark' award for attorney fees." *Torri-*

*si,* 8 F.3d at 1376; *see also Graulty,* 886 F.2d at 272–73 (instructing the district court to "take note that 25 percent has been a proper benchmark figure"). The circuit court found the federal cases persuasive, adopting their suggestion that "the appropriate percentage should be 25% as a benchmark, adjustable for special circumstances" and furthermore stated that "no peculiar circumstances ... merit greater than 25% of the common fund." *See supra* section I.B.

discretion in its method of awarding attorney's fees" by failing to pay him forty percent of the recovery amount pursuant to the written retainer agreement he had entered into with his clients. 3 Haw.App. at 578–79, 656 P.2d at 107–08. Based on the following "relevant factors," the ICA held that the circuit court had not abused its discretion and affirmed the circuit court's order granting attorneys' fees of one-third of the amount of the plaintiffs' recovery:

(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 244, 413 P.2d 242, 245 (1966). These considerations are "guides" to determining the value of the services and the court is not required to consider each of them in every case. *Id.* at 245, 413 P.2d at 246. In *Booker [v. Midpac Lumber Co.,* 65 Haw. 166, 649 P.2d 376 (1982),] our supreme court also said that where the efforts of an attorney employed under a contingency fee contract would have a tendency to advance the client's claim or to enhance the possibility of a favorable result, the contract and the reasonably estimated value of the case should be considered in fixing a reasonable attorney's fee, and a reasonable attorney's fee is one which is fair to both attorney and client. *Id.,* 649 P.2d at 381.

*Id.* at 584–85, 656 P.2d 105, 3 Haw.App. at 111, 643 P.2d 807. The Retirees cite the *Chow* factors and claim that, "[a]pplying the foregoing criteria to the instant case, it is apparent that the one third of the amount recovered that was found reasonable in *Chow* should have been applied herein."

The Retirees further note that this court has stated as follows:

An opinion expressed after full argument and due consideration upon a doubtful point closely connected with, or apparently though not necessarily involved in a case, should perhaps, on principle, be given greater weight than an actual decision rendered upon little argument and consideration. It should at least be given greater weight than an opinion expressed merely by the way. . . .

*Robinson v. Ariyoshi,* 65 Haw. 641, 654, 658 P.2d 287, 298 (1982). The Retirees cite *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 869 P.2d 1334 (1994), which quoted *Robinson* for the proposition that

a statement of a superior court [is] binding on inferior tribunals, even though technically dictum, where it was "passed upon by the court with as great care and deliberation as if it had been necessary to decide it, was closely connected with the question upon which the case was decided, and the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended."

*Jenkins,* 76 Hawai'i at 118, 869 P.2d at 1337 (quoting *Robinson,* 65 Haw. at 655, 658 P.2d at 298). The Retirees also rely upon *Chun III,* in which this court exercised its discretion in declining to adopt federal dicta, explaining that, "[i]nasmuch as this court is not bound by the dicta of federal district courts, and has never adopted a proposition such as that articulated in [the federal case urged by the Retirees], we decline to do so now." 92 Hawai'i at 446 n. 9, 992 P.2d at 141 n. 9. On the foregoing bases, the Retirees maintain that the circuit court "erred in rejecting the Hawaii [a]ppellate precedent in *Chow* in favor of [f]ederal [c]ourt criteria."

In the alternative, the Retirees argue that, "even assuming, *arguendo,* that the [circuit] [c]ourt was correct in applying the ... Ninth Circuit's standard in the instant case, nevertheless the [circuit] [c]ourt erred in its appli-

cation of that standard." *See Torrisi* and *Graulty, supra* note 17. The Retirees cite *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir.1995), which reasoned and held as follows:

> Attorneys for the derivative plaintiffs requested attorneys' fees of $8 million out of the derivative settlement of $12 million. The attorneys later lowered their request to $4 million, which the district court approved. Weinstein[, one of the derivative plaintiffs,] contends that the attorneys should not receive any fees because of the low recovery in the derivative lawsuit.

> We review a district court's award of attorneys' fees for abuse of discretion. *In re Washington Pub. Power Supply Sys. Litig.,* 19 F.3d 1291, 1296 (9th Cir.1994). Twenty-five percent is the "benchmark" that district courts should award in common fund cases. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990). The district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate. *Id.*

> The attorneys for the derivative plaintiffs contend that a $4 million award (thirty-three percent) for attorneys' fees is justified because of the complexity of the issues and the risks. They also argue that the derivative settlement does not reflect the nonmonetary benefits in the derivative settlement. Pacific Enterprises has agreed to resume its dividend and to enact restrictions on future Pacific Enterprises diversifications. Weinstein failed to respond to these arguments. We cannot conclude, on this record, that the district court's award of fees was an abuse of discretion.

47 F.3d at 378–79 (internal footnote omitted). The Retirees maintain that, "just as in *Pacific Enterprises,* in the instant case the twenty-five percent (25%) benchmark should be increased to one-third of the common fund, due to the complexity of the case, the great risks undertaken by [the Retirees'] attorneys, and due to the additional monetary benefits that will be bestowed upon the [Retirees] in the future that are not reflected in the common fund from which attorneys will be calculated." [18] In their reply brief, the Retirees further cite *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190 (3d Cir.2000), which they characterize as "revers[ing] the [federal district] court's denial of an attorney's fee request of one-third of the amount recovered in a common fund case because the [district] court failed to adequately set forth its reasons in denying said attorney's fees request."

In response, the ERS maintains that "*Chow* is clearly inapposite to the instant case," inasmuch as "*Chow* is not a class action case, nor is it a common fund case." The ERS also contends that, "although the Ninth Circuit case law is not binding precedent on this court, [the Hawai'i Supreme Court] has cited Ninth Circuit decisions favorably[ ] and has even adopted Ninth Circuit law as its own." As examples, the ERS cites *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239–40, 842 P.2d 634, 637 (1992), *aff'd,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), which adopted a principle articulated in *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988), and *Birmingham v. Fodor's Travel Publ'ns, Inc.,* 73 Haw. 359, 833 P.2d 70 (1992), which "f[ound] the reasoning of the Ninth Circuit in [*Winter v. G.P. Putnam's Sons,* 938 F.2d 1033 (9th Cir. 1991),] to be persuasive." *Birmingham,* 73 Haw. at 375, 833 P.2d at 79. The ERS further asserts that "[i]t was clearly not an abuse of discretion for the [circuit] court to have used 25 percent to determine an appropriate fee in this case, especially where there is not Hawaii authority to the contrary."

---

18. The Retirees explain that, because the circuit court "has ordered that [their] average final compensation ... be increased, [their] future retirement benefits ... will be increased," inasmuch as "an increase in the average final compensation (high three) increases one of the multipliers by which the retirement benefits of the [Retirees] are calculated" and "[t]his increase of future retirement benefits is in addition to the back retirement pay that was awarded to [the Retirees]." The Retirees also assert that "[t]hese future monetary increases in retirement benefits that are effectuated by the victory in the instant case are not included in the common fund from which the attorney's fees will be calculated, but will be paid [to the Retirees] for the rest of their lives."

With regard to the Retirees' invocation of *Pacific Enterprises*, the ERS argues that "*In re Pacific Enterprises* is distinguishable, and does not support Mr. Khim's argument that the lower court abused its discretion in not awarding him 1/3 of the amount recovered." We agree with the ERS.

As discussed *supra* in section II.C, we review the amount of the circuit court's award of attorneys' fees pursuant to the abuse of discretion standard, which "occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Chun III*, 92 Hawaiʻi at 439, 992 P.2d at 134 (internal quotation signals and citations omitted). Notwithstanding the Retirees' contentions, the circuit court did not disregard a controlling principle of law by failing to apply either the result in *Chow* or its reasoning. *Chow* is inapposite to the present matter, being neither a class action nor a common fund case. Moreover, in *Chow*, the plaintiffs' attorney "was discharged prior to the final settlement of the claim." 3 Haw.App. at 583, 656 P.2d at 110. Indeed, prior to reciting the six factors discussed *supra*, the ICA expressly stated as follows:

> In this jurisdiction, the award of attorney's fees is within the discretion of the trial court and the exercise thereof will not be disturbed upon appellate review except for abuse. *Booker v. Midpac Lumber Co.*, *supra*. *Where an attorney employed under a contingent fee contract is discharged prior to the occurrence of the contingency, the contract is terminated.* The attorney is, however, entitled to a *reasonable attorney's fee based upon a consideration of all relevant factors. Id.*, 649 P.2d at 379.

*Id.* at 584, 656 P.2d at 111 (emphases added). In the present matter, inasmuch as Khim was not discharged at any point during the proceedings, the circuit court was not required to apply the *Chow* factors. It is noteworthy that, notwithstanding the Retirees' invocation of *Jenkins* and footnote 9 of *Chun III*, *supra*, the circuit court did not

state that it was *bound* to follow the federal precedent of *Torrisi* and *Graulty*, but rather "f[ound] the federal cases to be persuasive." *See supra* note 17. In so finding, the circuit court properly exercised its discretion in the face of our jurisprudential silence as to the appropriate percentage of attorneys' fees that circuit courts should award in common fund cases.

■ The Retirees' assertion that the circuit court should have recognized that the present matter involves "special circumstances"[19] and awarded the Retirees one-third of the common fund as attorneys' fees is similarly unpersuasive. *Pacific Enterprises* is distinguishable from the instant case. In *Pacific Enterprises*, shareholders commenced (1) several derivative lawsuits filed in Los Angeles Superior Court against Pacific Enterprises' former officers, directors, and auditor, which were consolidated, and (2) several securities class action lawsuits against the company in federal court, which were also consolidated. 47 F.3d at 375. Two law firms were appointed co-lead counsel for the state court lawsuits, and three law firms were appointed co-lead counsel for the federal actions. *Id.* The parties reached "global settlement" through the assistance of two settlement mediators, "agree[ing] that Pacific Enterprises would receive $12 million from its officers' and directors' insurers and [the auditor]" and that the "[a]ttorneys for the derivative plaintiffs would receive $8 million out of this $12 million award," *i.e.*, a sixty-six and two-thirds percent award. *Id.* Although the parties reached a settlement with respect to the securities litigation, "[f]inal approval of both settlements [was] conditioned on the defendants' demand that the two settlements be linked," such that, "[i]f either settlement [was] vacated, both settlements [were] void."

Although Weinstein, who owned stock in Pacific Enterprises, had joined the derivative lawsuit, thereby accepting the co-lead counsel, he "objected to the proposed derivative settlement," contending "that the district court did not have jurisdiction over the derivative claims and that the proposed derivative

---

**19.** The Ninth Circuit has defined "special circumstances" as anything that would "indicate that the percentage recovery would be either too

small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

settlement would be unjust." *Id.* More than 1700 shareholders joined Weinstein's objections, and the federal district court "agreed with Weinstein that an $8 million fee award for the derivative attorneys appeared excessive." *Id.* at 375–76. Plaintiffs' counsel voluntarily "reduced their derivative fee request from $8 million to $4 million, and [the district court] approved the global settlements and dismissed both actions." *Id.* at 376.

As recited *supra*, on appeal to the Ninth Circuit, Weinstein did not argue that the twenty-five percent benchmark was a more appropriate measure of attorneys' fees, but rather maintained that "the attorneys should not [have] receive[d] *any fees* because of the low recovery in the derivative lawsuit." *Id.* at 379 (emphasis added). The Ninth Circuit acknowledged the same twenty-five percent "benchmark" for attorneys' fees and the exception for "special circumstances" as was noted by *Torrisi* and *Graulty, see supra* note 17, and plaintiffs' counsel asserted several grounds that could have qualified as "special circumstances," *e.g.,* "the complexity of the issues and the risks." *Id.* Nevertheless, the Ninth Circuit held that, inasmuch as "Weinstein failed to respond to [plaintiffs' counsels'] arguments," the court could not conclude, "on [the] record [before it], that the district court's award of fees was an abuse of discretion." *Id.* .

In the present matter, *Pacific Enterprises* is unhelpful to the Retirees primarily because the Ninth Circuit did not, as the Retirees suggest, "h[o]ld that special circumstances existed to deviate upwards from the twenty-five percent benchmark to one-third of the amount recovered." Indeed, as explained *supra*, *Pacific Enterprises* never actually reached the issue of whether such "special circumstances" existed at all, inasmuch as Weinstein completely failed to respond to the contentions of the plaintiffs' counsel, such that the plaintiffs' counsel essentially prevailed by default. *Id.* Moreover, unlike the instant case, in which we are asked to determine whether an award of thirty-three and one-third percent of the common fund would be more appropriate than the twenty-five percent awarded by the circuit court, the Ninth Circuit in *Pacific*

*Enterprises* addressed Weinstein's contention that the plaintiffs' counsel should receive *no* remuneration, as opposed to the one-third of the common fund awarded by the federal district court. It is also noteworthy that the present matter does not concern complex, consolidated derivative and securities lawsuits.

*Gunter* is likewise inapposite to the present matter. In *Gunter*, a "common fund" class action, the plaintiff class members did not object to the plaintiffs' attorneys' application for attorneys' fees, which "amount[ed] to one-third of the settlement amount." 223 F.3d at 191. The federal district court, however, "allowed fees of only 18% of the settlement fund." *Id.* On appeal, the United States Court of Appeals for the Third Circuit noted seven factors, articulated in the caselaw of that jurisdiction, "that district courts should consider in awarding fees" in "common fund cases." *Id.* at 195 n. 1. The *Gunter* court also stated that, "[n]otwithstanding our deferential standard of review, it is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion." *Id.* at 196. Based on the district court's failure to address the seven attorneys' fees factors, *Gunter* held that the district court's fee award opinions were "so terse, vague, [and] conclusory that [the court of appeals had] no basis to review it, [and therefore] vacate[d] the fee-award order and remand[ed the matter] for further proceedings." *Id.* at 196–201.

By contrast to *Gunter*, and as discussed *supra*, our jurisprudence does not require the circuit court to apply specific factors in determining attorneys' fees awards. It is further noteworthy that in *Graulty, see supra* note 17, the Ninth Circuit stated that, although a federal district court may "adjust [the 25% benchmark] upward or downward to fit the individual circumstances of [the] case," "such an adjustment ... must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." 886 F.2d at 273. In other words, by contrast to *Gunter*, the Ninth Circuit requires more detailed reason-

ing when federal district courts *deviate* from the twenty-five percent benchmark. Thus, notwithstanding the Retirees' argument that, "[j]ust as in *Gunter*, in the instant case, the [circuit] [c]ourt dealt with the fee award issue in a cursory and conclusory fashion," the circuit court, unlike the federal district courts in the Third Circuit, was not required to explain its reasoning pursuant to the seven *Gunter* factors. We hold, therefore, that the circuit court did not abuse its discretion in (1) adopting the twenty-five percent benchmark set forth in *Torrisi* and *Graulty*, *see supra* note 17, and (2) concluding that "no peculiar circumstances . . . merit greater than 25% of the common fund." *See supra* section I.B.

E. *The Circuit Court Did Not Err In Failing To Address Investment Income Because To Do So Would Have Exceeded The Scope Of This Court's Mandate On Remand.*

■ The Retirees contend that the circuit court "fail[ed] to enforce the implied agreement to pay [the Retirees] investment income earned on wrongfully withheld back retirement benefits." The Retirees maintain that, based on *Hawaiian Land Co., Ltd. v. Kamaka*, 56 Haw. 655, 547 P.2d 581 (1976), "the [circuit] [c]ourt should have ordered [the ERS] to pay [the Teachers] the investment income earned on the back retirement benefits that were due and owing to said class members by reason of the . . . March 4, 1996 order and March 11, 1996 judgment." The Retirees' argument is without merit.

■ In *State v. Lincoln*, 72 Haw. 480, 825 P.2d 64 (1992), *cert. denied*, 506 U.S. 846, 113 S.Ct. 137, 121 L.Ed.2d 90 (1992), this court observed (1) that "[i]t is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court," and (2) that "when acting under an appellate court's mandate, an inferior court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; . . . or intermeddle with it, further than to settle so much as has been remanded." 72 Haw. at 485–86, 825

P.2d at 68 (internal citations and quotation signals omitted).

In *Chun III*, this court expressly stated that it was remanding the matter to the circuit court for the narrow purpose of conducting "further proceedings regarding the method of awarding attorney's fees to Khim." 92 Hawai'i at 448, 992 P.2d at 143. Pursuant to *Lincoln*, therefore, the circuit court would have exceeded the scope of this court's mandate by awarding "investment income." Thus, we hold that the circuit court did not err in failing to award the Retirees "investment income" on remand from *Chun III*. *See supra* section I.B.

F. *The Circuit Court Did Not Err In Declining To Pay A Premium Or Prejudgment Interest On Back Retirement Benefits To The Teachers Because There Existed No Contract In Which Such Prejudgment Interest Could Be Grounded.*

■ The Retirees challenge the order granting fees and interest based on their claim that the circuit court "fail[ed] to enforce the expressed agreement to pay [the Retirees] the premium or interest on back retirement benefits." More specifically, the Retirees argue that a stipulation between the ERS and the Principals and Vice–Principals should apply to all of the Retirees, including the Teachers, "because the principals/vice principals case was consolidated with the teachers case." The ERS asserts that "the [circuit] court correctly declined to grant [pre]judgment interest to the retired teachers on the basis of the existence of a private stipulation entered *between the ERS and the retired principals and vice-principals class.*" (Emphasis in original.) We agree with the ERS.

As discussed *supra* in section III.A, HRS § 661–8 waives the State's immunity from prejudgment interest on claims based "upon a contract expressly stipulating for the payment of interest, or upon a refund of a payment into the 'litigated claims fund' as provided by law." *See supra* note 9. On December 4, 1991, prior to *Chun I* and the later consolidation of the Principals' and Vice Principals' lawsuit with the Teachers' lawsuit

by the ERS Board on remand from the circuit court, *Chun II*, 87 Hawai'i at 158, 952 P.2d at 1221, the ERS and the Principals and Vice–Principals stipulated as follows:

1. The injunctive relief granted in favor of [the Principals and Vice–Principals] pursuant to the Order [Granting the ERS's Motion for Summary Judgment, Granting the Principals' and Vice Principals' Motion for Clarification of Minute Order Dated 2/15/90, Granting the Principals' and Vice Principals' Motion for Award of Attorneys' Fees, and Entering of Judgment in the Principals' and Vice Principals' Favor, entered by the circuit court on January 3, 1991,] shall be stayed pending ERS's appeal of the Order and final nonappealable decision from a[c]ourt.

2. In the event that [the Principals and Vice–Principals] prevail on appeal, [the] ERS shall pay to [the Principals and Vice–Principals] a premium computed at the rate of ten percent (10%) per annum calculated upon only any additional principal amount adjudged as required to be paid to [the Principals and Vice–Principals] as a result of the ERS being required, pursuant to said injunction or any other order issued herein by a[c]ourt of competent jurisdiction, to recalculate the average final compensation of the monthly retirement and post-retirement allowances for [the Principals' and Vice–Principals'] class members.

. . . .

4. Any premium that may be required to be paid by the ERS under the provisions herein shall only be computed for the period beginning January 3, 1991, the date upon which the aforesaid injunction issued, until the date that adjudged additional amounts, if any, are paid to [the Principals and Vice–Principals].

5. *The parties expressly stipulate and agree that the premium provided for herein is not to be construed as postjudgment interest nor shall the premium serve as an acknowledgment by the State of Hawaii that a comparable rate of interest is in any way applicable in actions brought pursuant to Chapter 661, Hawaii Revised Statues; and, the parties further agree that the aforesaid premium of ten percent*

*(10%) per annum is the negotiated consideration for the stay of injunction.*

6. This Stipulation, *when approved by a justice of either the Hawaii Supreme Court or the Hawaii Intermediate Court of Appeals,* whichever the case may be, shall have the full force and effect of a Court order and shall be enforced as such. If this Stipulation and Order must be enforced in a court of competent jurisdiction, then the prevailing party shall be awarded all costs, incurred in enforcing or defending said stipulation and order, including but not limited to reasonable attorney's fees.

(Emphases added.) The stipulation was signed by counsel for the Principals and Vice–Principals and the ERS, but was *not* signed by a justice of this court or a judge of the ICA.

Even if we were to construe the foregoing stipulation as a contract, it would be a contract between *only* two parties—the ERS, on the one hand, and the Principals and Vice Principals, on the other. None of the authorities cited by the Retirees in their opening brief stand for the proposition that a private stipulation between two parties is extended to parties added to litigation by consolidation. Thus, notwithstanding the Retirees' argument that the ERS Board's consolidation of the Principals' and Vice Principals' lawsuit with the Teachers' lawsuit should somehow allow the Teachers to recover prejudgment interest without some underlying contract with the ERS which "expressly stipulat[es] for the payment of interest," *see supra* note 9, the Teachers are barred from receiving any award of prejudgment interest by HRS § 661–8.

We therefore hold that the circuit court did not abuse its discretion in "finding that the consolidation did not nor could it expand the stipulation and further finding that to do so would be tantamount to imposing prejudgment interest, which by law is not allowed against the State, because the [T]eachers did not even obtain final judgment until March 11, 1996." *See supra* section I.B.

G. *The Circuit Court Did Not Abuse Its Discretion In Not Requiring The ERS To Pay Postjudgment Interest As A Condition Of The Stay Because Sovereign Immunity Bars Such A Condition.*

In their appeal from the order granting stay of proceedings, *see supra* note 2, the Retirees allege that "the [circuit] court erred in not requiring the [ERS] to pay postjudgment interest upon the monetary award issued by the [circuit] court on October 18, 2000 as a condition of staying the operation of said October 18, 2000 monetary award." In light of our holding *supra* in section III.A that the State is immune from awards of HRS § 478–3 postjudgment interest in HRS § 661–1 actions, we further hold that the circuit court could not have erred in refusing to order the ERS to pay postjudgment interest on the ordered fees and interest as a condition of staying the execution of that order. *See supra* notes 6 and 8.

## IV. *CONCLUSION*

In light of the foregoing analysis, we (1) affirm the portion of the October 18, 2000 order as to the granting of attorneys' fees, *i.e.,* paragraphs one through thirteen of the order and paragraph two of the decree, (2) reverse the portion of the October 18, 2000 order granting postjudgment interest, *i.e.,* paragraphs fourteen through twenty of the order and paragraph one of the decree, and (3) affirm the February 14, 2001 order granting stay of proceedings.

