KNUD LINDGARD and COLETTE ANDREE LINDGARD, Plaintiffs-Appellants,
v.
RESIDUARY LIMITED PARTNERSHIP and KANEOHE RANCH COMPANY, LTD., Defendants-Appellees. and
RESIDUARY LIMITED PARTNERSHIP, a Hawai`i limited partnership, Plaintiff-Appellee,
v.
KNUD LINDGARD and COLETTE ANDREE LINDGARD, Defendants-Appellants, and
JOHN and MARY DOES 1-20 and DOE PARTNERSHIPS, CORPORATIONS, or OTHER ENTITIES 1-20, Defendants.
Nos. 26258, 26612
In the Intermediate Court of Appeals of Hawaii.
December 27, 2006.
On the briefs:
Knud Lindgard and Colette Andree Lindgard, plaintiffs-appellants, pro se.
Kirk W. Caldwell and Kevin W. Herring (Ashford & Wriston) for defendants-appellees Residuary Limited Partnership and Kaneohe Ranch Company, Ltd.
Terrance M. Revere, Jacqueline E. Thurston, and Jason P. Healey (Motooka Yamamoto & Revere) for defendants-appellants Knud Lindgard and Colette Andree Lindgard.
Kirk W. Caldwell and Kevin W. Herring (Ashford & Wriston) for plaintiff-appellee Residuary Limited Partnership.

MEMORANDUM OPINION
WATANABE, Presiding J., LIM, and FOLEY, JJ.
In this consolidated appeal, Knud Lindgard and Colette Andree Lindgard (the Lindgards) appeal from the final judgments entered by the Circuit Court of the First Circuit (the circuit court) in favor of Kaneohe Ranch Company, Ltd. (Kaneohe Ranch) and Residuary Limited Partnership (Residuary) (collectively, Appellees) in two lawsuits: (1) Lindgard v. Residuary Limited Partnership, Civil No. 02-1-0439-02 (Case 2);[1] and (2) Residuary Limited Partnership v. Lindgard, Civil No. 03-1-0607-03 (Case 3).[2]
As to Case 2, we vacate the Final Judgment and the summary judgment upon which the Final Judgment was based and remand for further proceedings. As to Case 3, we affirm.

BACKGROUND
On March 10, 1953 or 1958,[3] Kaneohe Ranch, the fee owner of undeveloped Lot No. 212 of Kalaheo Village, Unit 17, Kailua, District of Koolaupoko, City and County of Honolulu, Island of Oahu, State of Hawai`i, identified by Tax Map Key No. 04-04-029-063 and located at what is now 448 Iliwahi Loop, Kailua, Hawai`i (the Property), apparently entered into a Master Lease by which Kaneohe Ranch leased, for a fifty-five-year period commencing on January 1, 1953 or 1958,[4] a 45/100 undivided interest in the Property to Paul Whitney Trousdale, Lewis Winn Stunston, and Horace Winford Beek White (the Trousdale Group).
On August 7, 1958, Kaneohe Ranch and the Trousdale Group as Lessor[5] and Pacific Development Company, Limited (Pacific) as Lessee executed an Indenture[6] that granted Pacific a ground lease of the Property for a term of fifty-five years commencing January 1, 1958. Pacific thereafter constructed a residential home on the Property, then sold the home and assigned its interest in the Indenture to Richard Robinson and Margaret Robinson (the Robinsons), the Lindgards' predecessor-in-interest.
Under the Indenture, as modified by an Amendment and Extension of Lease executed by Kaneohe Ranch and the Trousdale Group as Lessor and the Robinsons as Lessee on January 20, 1966 (the Amended Indenture), the fixed annual ground lease rent for the Property until December 31, 1965 was $175.00 and the fixed annual ground lease rent for the period from January 1, 1966 to and including June 30, 1996 was $210.00. The Amended Indenture further specified that the ground lease rental amount for the period from July 1, 1996 through December 31, 2012 would be determined by mutual agreement of the parties, or failing such agreement, by a mandatory arbitration procedure conducted in accordance with the terms of the Amended Indenture.
By an Assignment of Lease and Consent executed on November 13, 1967, the Robinsons sold, assigned, transferred, set over, and delivered their leasehold interest in the Property, as set forth in the Amended Indenture, to James Davis Gilstrom and Martha Louise Gilstrom (the Gilstroms). On July 9, 1970, the Gilstroms, pursuant to an Assignment of Lease, transferred their leasehold interest in the Property to the Lindgards. On May 12, 1998, Residuary acquired the fee title to the Property from Kaneohe Ranch, retroactive to January 1, 1998.

A. Case 1
After failing to reach an agreement with the Lindgards regarding the amount of ground lease rent to be paid for the period from July 1, 1996 through December 31, 2012, Residuary invoked arbitration with the State Housing Finance and Development Corporation (HFDC), now known as the Hawaii Housing Finance and Development Administration, as required by Hawaii Revised Statutes (HRS) § 519-2(b) (1993).[7] When the Lindgards refused to cooperate with HFDC's process, HFDC closed its proceedings and informed the Lindgards that they were subject to the arbitration terms specified in the Amended Indenture.
Pursuant to the arbitration process set forth in the Amended Indenture, Residuary selected a real estate appraiser as its arbitration panel representative. The Lindgards initially refused to appoint their representative, prompting Residuary to petition the circuit court to appoint the Lindgards' representative. The circuit court ordered the Lindgards to select a representative or have one appointed on their behalf. The Lindgards selected an appraiser as their representative, but the court eventually disqualified their selection because he had already been hired by the Lindgards to prepare an appraisal of the Property and would not, therefore, be an impartial arbitrator.
When the Lindgards failed to act on the circuit court's subsequent invitation to name an alternate representative, the circuit court appointed an appraiser representative on their behalf. Residuary's representative and the Lindgards' court-appointed representative then selected a third panel member in accordance with the Amended Indenture requirements.
Throughout the panel selection process, the Lindgards filed various motions to disqualify all three panel members as biased. The circuit court denied all of the motions. The circuit court additionally denied the Lindgards' motion to consolidate the arbitration proceedings with an independent lawsuit (Case 2) that they had filed against Residuary and Kaneohe Ranch, or to stay the arbitration proceedings pending the outcome of that litigation.
On April 17, 2002, the three-member arbitration panel issued its decision and award, setting the annual ground lease rent for the Property at $7,000.00 per year. Residuary moved the circuit court to confirm the award, and the Lindgards moved the circuit court to vacate the award. On August 28, 2002, after a hearing held on June 23, 2002, the circuit court issued its Order and Final Judgment confirming the arbitration award in favor of Residuary and denying the Lindgards' motion to vacate the arbitration award. The circuit court further ordered the Lindgards to pay $9,374.94 as their share of the arbitrators' fees and costs and pre-judgment and post-judgment interest at the rate of ten percent a year.
The Lindgards appealed the circuit court's order, and on March 18, 2005, in appeal No. 25358, this court affirmed the circuit court's order by Summary Disposition Order.

B. Case 2
On February 20, 2002, prior to the arbitration hearing held in Case 1, the Lindgards filed a five-count lawsuit (Civil No. 02-1-0439-02) against Appellees in the circuit court.
Count I alleged that when the Lindgards accepted the assignment of the Amended Indenture to the Property from Kaneohe Ranch, Kaneohe Ranch maliciously and intentionally failed to disclose to them that the Property's soil was contaminated by the toxic chemical Chlordane, the presence of which had endangered the safety of the Lindgards and their pets and caused them harm. The Lindgards claimed that they would not have accepted the assignment of the Amended Indenture if they had been aware of the presence of the contamination. They also claimed to have discovered the presence of Chlordane in June 1996.
Count II alleged that when the Lindgards accepted the Amended Indenture to the Property, Kaneohe Ranch maliciously and intentionally failed to disclose the material fact that the soil on the Property was unstable canal fill that could not support the building and structures on the Property. The Lindgards also claimed that: (1) Kaneohe Ranch implicitly represented that the Property was capable of supporting the house and other structures on the Property, and (2) the Lindgards relied on the false representations in accepting the assignment of the Amended Indenture and would not have accepted the assignment of the Amended Indenture if they had known of the falsity of the representations. The Lindgards stated that they discovered the fill when the Board of Water Supply dug a trench on the Property in May 1999.
Count III alleged that the presence of Chlordane and fill on the Property constituted a malicious and intentional breach of Kaneohe Ranch's implied warranties of habitability and fitness for use of the Property.
Count IV sought to rescind the assignment of Amended Indenture to the Lindgards on the basis that there had been a mistake of fact and, hence, no meeting of the minds since the Lindgards were unaware of the presence of Chlordane or fill on the Property.
Count V claimed that the Lindgards were entitled to an award of punitive damages based on the malicious and intentional acts committed by Kaneohe Ranch.
On August 1, 2003, Appellees filed a motion for summary judgment, arguing that judgment in their favor should be entered as a matter of law because: (1) the claims alleged in the Lindgards' complaint were without factual or legal support since no evidence was adduced that either Kaneohe Ranch or Residuary was negligent or had breached any duty to the Lindgards; (2) the Lindgards' claims were time-barred and raised solely to gain leverage in the lease rent arbitration proceedings conducted in 2002; and (3) the implied warranties of habitability and fitness for a particular purpose did not apply to Kaneohe Ranch or Residuary because they did not: (a) develop the Property; (b) construct, design, or build any structures on the Property; or (c) place Chlordane or any fill on the Property.
Kaneohe Ranch and Residuary assumed, for purposes of their time-bar argument, that the Chlordane claim accrued in June 1996 and the fill claim accrued in May 1999. They argued that pursuant to HRS § 657-7 (1993),[8] the two-year statute of limitations was applicable to both claims and, therefore, the Chlordane claim expired in June 1998 and the fill claim expired in May 2001. Since the complaint was not filed until February 2002, Kaneohe Ranch and Residuary urged the circuit court to find both claims untimely as a matter of law.
Kaneohe Ranch and Residuary also argued that the Lindgards' claims were barred by HRS § 657-8 (Supp. 2005),[9] which requires actions to recover damages for injury to real or personal property, or for bodily injury or wrongful death, arising out of any deficiency or negligence in the planning, design, construction, supervision and administering of construction, and observation of construction relating to an improvement to real property to be commenced no more than two years after the cause of action accrued and, in any event, not more than ten years after the date of completion of the improvement. Kaneohe Ranch and Residuary pointed out that the Lindgards had lived in the house on the Property since the 1970s.
At the outset of the September 29, 2003 hearing on the motion for summary judgment, the circuit court[10] orally indicated that its inclination was "to grant the motion because the statute of limitations has run; there's a two-year statute of limitations regarding injury to persons or property." After hearing the arguments of the parties, the circuit court orally granted the motion.
On November 3, 2003, the circuit court entered an order granting the motion for summary judgment, on the sole basis that "all claims alleged in the Complaint . . . are barred by the two year statute of limitations[.]" On December 3, 2003, the circuit court entered final judgment in favor of Appellants and against the Lindgards. The Lindgards timely appealed, resulting in appeal No. 26258.

C. Case 3
Although the Lindgards filed an appeal from the circuit court's judgment confirming the arbitration award in Case 1, they were unsuccessful in obtaining a stay of the confirmed arbitration award and failed to file a supersedeas bond pending appeal. When the Lindgards failed to pay the judicially confirmed lease rent set by the arbitration panel, Residuary advised them, apparently by a letter dated January 17, 2003,[11] that they were in default under the Amended Indenture and that failure to fully cure the default within thirty days would result in further legal action, including termination of the Amended Indenture.
On March 20, 2003, upon the Lindgards' failure to cure the default, Residuary filed a Complaint for Termination of Sublease, Ejectment and Damages, commencing Case 3. In its complaint, Residuary sought: (1) termination of the Amended Indenture; (2) a decree of ejectment and/or writ of possession, authorizing and directing the removal of the Lindgards from the Property and placing Residuary in sole and exclusive possession and control of the Property; (3) judgment in favor of Residuary and against the Lindgards for all amounts due and owing under the Amended Indenture; and (4) an award of costs and reasonable attorney's fees incurred by Residuary.
In their amended answer, the Lindgards alleged twenty-five defenses.[12] The Lindgards also filed a counterclaim, alleging the same five counts that they had alleged in their complaint against Kaneohe Ranch and Residuary in Case 2.
On January 30, 2004, Residuary filed a motion for summary judgment. Residuary argued that there were no material issues of fact as to its claim for relief because it was undisputed that the Lindgards had failed to pay the lease rent and other amounts due under the confirmed arbitration award. Residuary also argued that the Lindgards' counterclaim, which was substantively identical to the Lindgards' complaint in Case 2, had been rejected by the circuit court in its judgment in Case 2. In opposing Residuary's summary judgment motion, the Lindgards contended that questions of material fact existed regarding: (1) any laches or statute of limitations applicable to their claims; (2) whether "the statute of limitations should be tolled because the Lindgards were lulled into inaction with hopes of settling the issue of the chlordane contamination out of court at the arbitration proceedings instituted by [Residuary]"; (3) the effect to be given to the circuit court's judgment in Case 1, since the judgment was still on appeal, the Lindgards "did not have a full and fair opportunity to litigate the issues at the arbitration which has been the basis of the previous suit (and the current suit)," and the arbitrators who conducted the arbitration were impartial and biased in favor of Residuary and Kaneohe Ranch.
On May 14, 2004, the circuit court entered Findings of Fact, Conclusions of Law, Order Granting Plaintiff's Motion for Summary Judgment Filed January 30, 2004, and Decree Terminating Lease (the May 14, 2004 Order). The May 14, 2004 Order determined that as of January 1, 2004, the Lindgards were "delinquent in the sum of $93,781.78 in unpaid lease rent, interest, late fees, costs, reasonable attorneys' fees, and [their] share of the lease rent arbitration costs, which amount is due and owing to [Residuary]." The circuit court also concluded that the Lindgards had breached and were in default of the Amended Indenture and therefore, Residuary was entitled to terminate the Amended Indenture. The circuit court ordered termination of the Amended Indenture, issued a writ of possession in favor of Residuary and against the Lindgards, and declared Residuary's title to the Property to be free and clear of the Amended Indenture and any claims or liens based thereon (other than real property tax liens).
On May 14, 2004, the circuit court entered Final Judgment in favor of Residuary and against the Lindgards pursuant to the May 14, 2004 Order. The Final Judgment also dismissed the Lindgards' counterclaim "without prejudice to the outcome of the appeal of [Case 2]." The Lindgards timely appealed, resulting in appeal No. 26612.

DISCUSSION

A. Case 2
In Case 2, the circuit court granted summary judgment in favor of Kaneohe Ranch and Residuary on grounds that the Lindgards' claims were barred by the "two year statute of limitations[.]" At the hearing on the motion for summary judgment, the circuit court noted that "there's a two-year statute of limitations regarding injury to persons or property." The circuit court thus apparently applied the statute of limitations set forth in HRS § 657-7 for "[a]ctions for the recovery of compensation for damage or injury to persons or property[.]"
On appeal, the Lindgards, pro se, raise nine points of error, eight[13] of which do not relate to any claims raised by their complaint in Case 2 and which will, accordingly, not be considered. The only point of error raised by the Lindgards that is relevant to Case 2 is whether the circuit court properly concluded that the Lindgards' claims were barred by the two-year statute of limitations for damages to persons or property prescribed by HRS § 657-7.
The Hawai`i Supreme Court has stated that the appropriate statute of limitations period is determined by "the nature of the claim or right, not the form of the pleading." Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981). "The nature of the right or claim is determined from the allegations contained in the pleadings." Id. Therefore, we must examine the pleadings in Case 2 to determine the nature of the right or claim alleged by the Lindgards in Case 2.
Counts I and II of the Lindgards' complaint essentially alleged that Kaneohe Ranch, by failing to disclose the presence of Chlordane and fill on the Property, implicitly made fraudulent representations that induced the Lindgards to accept assignment of the Amended Indenture for the Property. In Au, the Hawai`i Supreme Court was called upon to determine whether a claim that the appellees had made fraudulent representations to the appellant concerning the existence of water leakages in a residence purchased by the appellant was a claim for damage or injury to persons or property subject to the two-year statute of limitations period set forth in HRS § 657-7. The supreme court held:
HRS § 657-7 has been interpreted to apply to "claims for damages resulting from physical injury to persons or physical injury to tangible interests in property." Higa v. Mirikitani, 55 Haw. 167, 169-70 & n.5, 517 P.2d 1, 3 & n.5 (1973). In that case, we found that legal malpractice involved nonphysical injury to an intangible interest of plaintiff, thus HRS § 657-1(1) applied. Id.

However, the instant case does not involve the kinds of injury to which HRS §§ 657-7 and 657-1(1) would apply. Although the end result of the fraudulent representation was physical injury to appellant's tangible interest in property, wherein HRS § 657-7 would seemingly apply, we believe that the instant case falls within the purview of HRS § 657-1(4). The nature of this claim is not the physical injury to property, rather it is the making of the fraudulent representations concerning the condition of the home which induced appellant to purchase it. Since fraudulent representations are not governed by a specific limitations period, the general limitations period set forth in HRS § 657-1(4) applies.
This statute provides a six-year statute of limitations for personal actions not specifically covered elsewhere. A personal action has been defined as:
. . . an action brought for the recover of personal property, for the enforcement of a contract or to recover for its breach, or for the recovery of damages for the commission of an injury to the person or property; an action for the recovery of a debt, or damages from the breach of contract, or for a specific personal chattel, or for the satisfaction in damages for injury to the person or property. (Footnotes omitted.)

Powell v. Buchanan, 245 Miss. 4, 147 So.2d 110 (1962); 1 C.J.S. Actions, § 1. Since this definition includes fraudulent representations, the six-year limitations period is applicable.
We hold that the relevant limitations period for fraudulent representation is governed by HRS § 657-1(4). Thus, appellant's claim under Count I was timely filed.
63 Haw. at 216-17, 626 P.2d at 178-79 (footnote omitted, emphases in original). In this case, unlike in Au, the Lindgards' Chlordane and fill claims allege a fraudulent failure to disclose rather than a fraudulent representation. Assuming, without deciding, that a duty to disclose the presence of Chlordane or fill existed at the time the Lindgards accepted assignment of the Amended Indenture, we conclude, in light of the supreme court's reasoning in Au, that the applicable statute of limitations for a fraudulent failure to disclose claim is HRS § 657-1(4) (1993), which states:
Six years. The following actions shall be commenced within six years next after the cause of action accrued, and not after:
. . . .
(4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.
Therefore, the circuit court incorrectly held that a two-year statute of limitations was applicable.
In Count III, the Lindgards alleged that Kaneohe Ranch materially breached the implied warranties of habitability and fitness for use of the Property, entitling the Lindgards to punitive damages. In Count IV, the Lindgards alleged that because they were unaware of the presence of Chlordane or fill on the property, a bilateral or unilateral mistake occurred, precluding a meeting of the minds and entitling them to rescission of the Amended Indenture. These claims were couched in contract and did not seek compensation for damages arising from injury to persons or property, or construction to improve real property. Therefore, the circuit court incorrectly held that the two-year statute of limitations prescribed by HRS §§ 657-7 or 657-8 was applicable to these claims. Au, 63 Haw. at 219, 626 P.2d at 180.
Count V alleged that the acts of Kaneohe Ranch and Residuary that were set forth in the Lindgards' complaint were "malicious and intentionally done in disregard of [the Lindgards'] rights and feelings and for the benefit of [Kaneohe Ranch], and therefore, [the Lindgards] are entitled to an award of punitive damages against [Kaneohe Ranch] in an amount to be proven at trial." Count V therefore requested an award of punitive damages, in addition to compensatory damages requested for the claims made in Counts I through IV, and was subject to the statute of limitations for Counts I through IV.
Accordingly, we vacate the summary judgment entered by the circuit court in Case 2 and the final judgment entered pursuant to the summary judgment.

B. Case 3
In their appeal from the judgment in Case 3, the Lindgards raise several points of error.
First, they claim that the circuit court erred when it entered an order granting Residuary's motion for summary judgment because genuine issues of material fact existed regarding whether their counterclaim was barred by the statute of limitations and res judicata. However, the record reveals that the circuit court dismissed the Lindgards' counterclaim without prejudice, pending the outcome of their appeal of the judgment in Case 2. The five counts of the Lindgards' counterclaim in Case 3 mirrored the five counts of the Lindgards' complaint in Case 2. In light of our vacatur of the summary judgment entered in Case 2, it is unnecessary to consider this point of error.
Second, the Lindgards claim that the circuit court erred when it ordered termination of the Amended Indenture and based its judgment on that order because, contrary to the express terms of the Amended Indenture, the arbitrators who determined the annual lease rent were not impartial and failed to consider the presence of Chlordane and the fill in deciding the value of the Property and the annual lease rent owed by the Lindgards for the Property. This point of error was resolved by the Summary Disposition Order entered by this court on March 18, 2005 and will not be relitigated.
Third, the Lindgards claim that the circuit court erred when it entered a money judgment against them based on the judgment entered in Case 1 because: (1) the judgment in Case 1 had been appealed and was not final, (2) the Lindgards did not have a full and fair opportunity to litigate the Chlordane and fill issues during the arbitration proceedings in Case 1, and (3) there was evidence of partiality of the arbitrators sufficient to vacate the arbitration award.
The Lindgards do not dispute that they failed to pay the lease rent based on the arbitration award confirmed by the circuit court in Case 1. Additionally, they did not file a supersedeas bond pending their appeal of Case 1. In light of our summary disposition order affirming the circuit court's judgment in Case 1, this point of error has no merit.
Finally, the Lindgards allege that the circuit court erred in granting Residuary attorneys' fees in the amount of $4,036.05 because Residuary failed to present valid evidence supporting the fees. Our review of the record indicates that Residuary's attorneys submitted detailed billing records itemizing the hours, rate, and nature of the attorney services provided to litigate Case 3. The circuit court found the fees to be reasonable, and our review did not indicate that the circuit court abused its discretion in granting the award. See Chun v. Board of Trs. of the Employees' Ret. Sys. of the State of Hawai`i, 106 Hawai`i 416, 431, 106 P.3d 339, 354, reconsideration denied, 106 Hawai`i 477, 106 P.3d 1120 (2005).

CONCLUSION
As to Case 2, we vacate the: (1) Order Granting Defendants' Motion for Summary Judgment, Filed August 1, 2003, entered by the circuit court on November 3, 2003; and (2) Final Judgment in Favor of Defendants Residuary Limited Partnership and Kaneohe Ranch Company, Ltd. and Against Plaintiffs Knud Lindgard and Colette Andree Lindgard, entered by the circuit court on December 3, 2003.
As to Case 3, we affirm the: (1) Findings of Fact, Conclusions of Law, Order Granting Plaintiff's Motion for Summary Judgment Filed January 30, 2004, and Decree Terminating Lease, entered by the circuit court on May 14, 2004; and (2) Final Judgment entered by the circuit court on May 14, 2004.
NOTES
[1] The Honorable Victoria S. Marks presided.
[2] The Honorable Eden Elizabeth Hifo presided.
[3] The Master Lease is not included in the Record on Appeal. In various pleadings in both cases that were consolidated for this appeal, the parties mention that the Master Lease, although dated March 10, 1958, commenced on January 1, 1958. See, e.g., the Motion for Summary Judgment filed in Lindgard v. Residuary Limited Partnership, Civil No. 02-1-0439-02, Supreme Court No. 26258 on February 20, 2002 (Case 2); and the Complaint filed in Residuary Limited Partnership v. Lindgard et al., Civil No. 03-1-0607-03, Supreme Court No. 26612 (Case 3). However, copies of documents apparently filed at the Bureau of Conveyances that refer to the Master Lease between Kaneohe Ranch Company, Limited (Kaneohe Ranch) and Paul Whitney Trousdale, Lewis Winn Stunston, and Horace Winford Beek White (the Trousdale Group) state that the Master Lease was "dated January 2nd, 1953 . . . for a term commencing January 1st, 1953[.]" See, e.g., the Indenture between Kaneohe Ranch and the Trousdale Group, as Lessor and Pacific Development Company, Limited (Pacific), as Lessee, dated August 7, 1958.
[4] See footnote 3.
[5] In the introductory paragraph of the Indenture, dated August 7, 1958, the Trousdale Group is referred to as "Sublessors" and Pacific is referred to as "Lessee". A few paragraphs later, the Indenture indicates that Kaneohe Ranch and the Trousdale Group were joining to lease all of their interests in undeveloped Lot No. 212 of Kalaheo Village, Unit 17, Kailua, District of Koolaupoko, City and County of Honolulu, Island of Oahu, State of Hawai`i, identified by Tax Map Key No. 04-04-029-063 and located at what is now 448 Iliwahi Loop, Kailua, Hawai`i (the Property), including Kaneohe Ranch's reversionary interest in the Trousdale Group's 45/100 undivided interest in the Property, and that Kaneohe Ranch and the Trousdale Group would be collectively referred to in the Indenture as "Lessor". Throughout the records of both consolidated appeals, the Indenture is referred to sometimes as a "Lease" and sometimes as a "Sublease". For purposes of this opinion, we refer to the document as the "Indenture."
[6] See footnote 5.
[7] At the time, Hawaii Revised Statutes (HRS) § 519-2 (1993) provided, in relevant part, as follows:

Residential leases of real property. (a) All leases as defined by section 516-1, of residential lots, as defined by section 516-1, existing on June 2, 1975, or entered into thereafter, which provide for reopening of the contract for renegotiation of lease rent terms shall in the case of leases after June 2, 1975, provide the following, or in case of leases existing on June 2, 1975, shall be construed in conformity with the following:
(1) Such renegotiations shall not be scheduled more frequently than once every fifteen years, provided the first of such reopenings shall not be scheduled prior to the fifteenth year following the initial date of the lease; and
(2) Upon renegotiation, the lease rent payable shall not exceed the amount derived by multiplying the "owner's basis" by four per cent. For purposes of this section, "owner's basis" means the current fair market value of the lot, excluding onsite improvements, valued as if the fee title were unencumbered; less the lessee's share, if any, of the current replacement cost of providing existing offsite improvements attributable to the land, which replacement cost shall include an overhead and profit not exceeding twenty per cent of the current replacement cost of the existing offsite improvements, or less the original lot development credit to the lessee, whichever is greater. For purposes of this section, "offsite improvements" means all physical improvements such as, but not limited to, roads, sewer lines, sewage treatment plants, and underground utility cables, constructed or placed in a subdivision or development off the land intended for occupancy, which improvements are to be used in common by occupants of all lands adjoining such improvements or by occupants of all lands for whose benefit the improvements have been constructed or placed; and "onsite improvements" means all physical improvements placed on a residential lot intended for occupancy which improvements are for the benefit of occupants of that lot, including but not limited to, dwelling units, garages, service buildings, stairs, walkways, driveways, walls, trees, shrubs, landscaping, and pools.
(b) In the event the parties to a lease are unable to achieve an agreement under any reopening provision, the housing finance and development corporation or its designee shall arbitrate, and its findings shall be binding and conclusive on both parties. Arbitration proceedings under this subsection will be subject to the following requirements:
(1) An advance deposit, which amount shall be determined by the corporation, equal to projected expenses and fees of the corporation or its designee for arbitration proceedings shall be required and shall be paid equally by lessees and lessors. All additional expenses and fees incurred by the corporation or its designee while acting as the arbitrator shall be borne equally by lessees and lessors. These additional expenses and fees shall be subject to monthly billings or other arrangements which may be specified by contract. If more than one lessee is involved in an arbitration proceeding, all lessees shall share equally in one-half of the arbitration costs. The same division of costs shall apply if more than one lessor is involved in a proceeding.
(2) Failure on the part of lessees to comply with the provisions set forth in this subsection, including failure to make advance deposits or payments, shall result in forfeiture of any rights or remedies under this chapter for arbitration, and the lessees' sole rights and remedies shall be as provided in the lease document.
(3) If lessors fail to comply with the provisions of this subsection, including failure to make advance deposits or payments, then arbitration proceedings under this chapter will cease and the lease rent shall be set at the most recent fixed lease rent. Upon compliance with the provisions of this chapter, the arbitration may proceed, with the determination of the new lease rent effective only from the date of compliance by the lessor.
(4) Except as provided in paragraphs (b)(2) and (b)(3) above, all new lease rents shall be effective as of the date of reopening.
For the purpose of this subsection, "arbitration proceedings" means the actual arbitration conducted by the corporation or its designee pursuant to a contract executed by and among the lessees, lessor, and the arbitrator detailing among other things, the following: description of properties involved, time of performance, compensation, method of payment, settlement and other procedures, and termination.
(c) Any covenant or provision of a lease in violation of this section, shall not be enforceable in any court in this State.
(d) For the purpose of this section renegotiation shall not include negotiation for the determination of lease rental under section 516-66 arising out of an extension under section 516-65.
HRS § 519-2 (1993). Effective July 1, 2006, the foregoing statute has been changed to substitute "Hawaii housing finance and development adminsistration" for "housing and community development corporation of Hawaii." HRS § 519-2 (Supp. 2005).
[8] HRS § 657-7 (1993) provides:

Damage to persons or property. Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13.
HRS § 657-13 (1993) provides:
Infancy, insanity, imprisonment. If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, at the time the cause of action accrued, either:
(1) Within the age of eighteen years; or,
(2) Insane; or,
(3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life;
such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.
[9] HRS § 657-8 (Supp. 2005) provides now, as it did during the proceedings below, in relevant part, as follows:

Limitation of action for damages based on construction to improve real property. (a) No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of any deficiency or neglect in the planning, design, construction, supervision and administering of construction, and observation of construction relating to an improvement to real property shall be commenced more than two years after the cause of action has accrued, but in any event not more than ten years after the date of completion of the improvement.
[10] The Honorable Victoria S. Marks presided over the hearing.
[11] The January 17, 2003 letter is not in the record on appeal.
[12] Knud Lindgard and Colette Andree Lindgard (the Lindgards) alleged inter alia the following defenses: failure to state a claim; the complaint was barred by the statute of limitations, laches, waiver, and estoppel; Residuary Limited Partnership (Residuary) lacked standing to assert the claims set forth in the complaint; the action was not prosecuted in the name of the real party in interest; the claims upon which the action was based were barred because they were determinable by other means provided by contract; the issues raised were referable to arbitration; the complaint failed to alleged compliance with all terms and conditions of the contract upon which the action was based; the Lindgards' non-performance of the contract was excused by Residuary's breach of the contract, material failure of consideration, and breach of the warranty of habitability; the action was barred, void, voidable, or null due to breach of the warranty of habitability, mutual or unilateral mistake of fact, lack of consideration, unconscionability or illegality of the contract, failure of the occurrence of a condition precedent to the Lindgards' duty of immediate performance, and non-occurrence of a condition subsequent to the Lindgards' duty of immediate performance which terminated Residuary's right to immediate performance; the action was barred by HRS chapters 516 (governing lands leased as residential lots) and 519 (governing real property leases); and Residuary failed to mitigate damages and had unclean hands.
[13] Six of the Lindgards' points of error (1, 2, 4, 5, 6, and 7) challenge the arbitration process for determining the ground lease rent for the Property that was the subject of Case 1. Point of error 8 contends that the Circuit Court of the First Circuit (the circuit court) erred in not recognizing that the Lindgards had properly paid all their lease rent to Kaneohe Ranch upon demand and were not in arrears. This point of error is relevant to Case 3. Point of error 9 alleges that the circuit court "erred by allowing Kaneohe Ranch as the executor for [Residuary] to engage in a bait and switch routine to intimidate and strong arm [the Lindgards] into buying the lease to fee at inflated prices." However, there was no allegation in the Lindgards' complaint in Case 2 that related in any way to the lease-to-fee conversion of the Property.